McCARTNEY v ATTORNEY GENERAL

Docket No. 201052. Submitted June 9, 1998, at Grand Rapids. Decided
October 2, 1998, at 9:05 A.M. Leave to appeal sought.

P. Abbott McCartney brought an action in the Emmet Circuit Court
against the Attorney General, alleging wrongful denial of a request
pursuant to the Freedom of Information Act (FOIA), MCL 15.231 *et
seq.*; MSA 4.1801(1) *et seq.*, to disclose six documents relating to
the Governor's negotiations with three Indian tribes regarding a
gaming compact. The documents consisted of three letters sent to
the Governor's office by legal counsel for the tribes and the draft of
a response written by the Governor's office. Those four documents
had been forwarded to the defendant by the Governor's office for
the specific purpose of obtaining legal advice. The remaining two
documents were internal memoranda of the defendant with regard
to the legal advice sought by the Governor. One was written by an
assistant attorney general to a deputy attorney general and reiter-
ated discussions between the assistant and the Governor's office. It
also contained recommendations, opinions, and strategies regard-
ing the compacts and communicated the assistant's thoughts and
impressions. The other memorandum was prepared by an assistant
attorney general for review by his superior. The court, Charles W.
Johnson, J., granted summary disposition in favor of the defendant.
The plaintiff appealed.

The Court of Appeals *held*:

1. The Governor did not exceed the scope of his authority in
negotiating with the Indian tribes for a gaming compact. The Gov-
ernor's actions were not ultra vires and did not prevent the Gover-
nor and the defendant from having a valid attorney-client
relationship.

2. The Governor is not required to disclose records pursuant to
an FOIA request. Because the four letters forwarded to the defend-
ant were not obtainable from the Governor's office by way of an
FOIA request, they were also not obtainable from the defendant by
way of an FOIA request when forwarded for the purpose of
obtaining legal advice. The court properly found that the four let-
ters were protected from disclosure by the attorney-client privilege
exemption of the FOIA, MCL 15.243(1)(h); MSA 4.1801(13)(1)(h).

3. The court properly determined that the defendant's two internal memoranda were protected from disclosure by the deliberative process exemption of the FOIA, MCL 15.243(1)(n); MSA 4.1801(13)(1)(n), and that the memorandum written by the assistant attorney general to the deputy attorney general was also protected from disclosure by the attorney-client privilege exemption of the FOIA.

4. No in camera review was necessary to determine if the memoranda qualified for disclosure under § 11 of the FOIA, MCL 15.241; MSA 4.1801(11), because subsection 11(4) specifically provides that § 11 does not apply to public records that are exempt from disclosure under § 13 and the memoranda were exempt from disclosure under § 13.

Affirmed.

1. CONSTITUTIONAL LAW — GOVERNOR'S AUTHORITY — ATTORNEY GENERAL — ATTORNEY AND CLIENT.

The Governor may negotiate gaming compacts with Indian tribes where the product of the negotiations has no effect without legislative approval; where the Governor is acting within the scope of the Governor's authority in conducting such negotiations, there is an attorney-client relationship established between the Governor and the Attorney General when the Governor seeks legal assistance from the Attorney General with regard to such negotiations (Const 1963, art 5, §§ 1, 17).

2. RECORDS — FREEDOM OF INFORMATION ACT — GOVERNOR — ATTORNEY-CLIENT PRIVILEGE EXEMPTION.

The Governor is not a "public body" as defined under the Freedom of Information Act and is not required to disclose records pursuant to a request under the act; documents that are not obtainable from the Governor pursuant to a request under the act are not obtainable from the Attorney General pursuant to a request under the act where the documents are forwarded to the Attorney General by the Governor for the specific purposes of obtaining legal advice; the documents are exempt from disclosure under the attorney-client privilege exemption of the act (MCL 15.243[1][h]; MSA 4.1801[13][1][h]).

3. RECORDS — FREEDOM OF INFORMATION ACT — ATTORNEY-CLIENT PRIVILEGE EXEMPTION.

Internal memoranda within the Attorney General's office that reiterate discussions with the Governor's office concerning legal advice requested by the Governor and contain recommendations, opinions, and strategic advice that was given by the Attorney General are protected from disclosure pursuant to a Freedom of Informa-

tion Act request by the attorney-client privilege exemption of the act; confidential client communications, along with opinions, conclusions, and recommendations based on those communications, are protected by the attorney-client privilege (MCL 15.243[1][h]; MSA 4.1801[13][1][h]).

4. RECORDS — FREEDOM OF INFORMATION ACT — DELIBERATIVE PROCESS EXEMPTION.

Internal memoranda within the Attorney General's office containing recommendations, opinions, and strategies with regard to legal advice requested by the Governor that are preliminary, nonfactual, and part of the deliberative activity necessary to the Attorney General's office are protected from disclosure pursuant to a Freedom of Information Act request by the deliberative process exemption of the act (MCL 15.243[1][n]; MSA 4.1801[13][1][n]).

*P. Abbott McCartney,* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Daniel M. Greenberg,* Assistant Attorney General, for the defendant.

Before: WHITE, P.J., and HOOD and GAGE, JJ.

PER CURIAM. Plaintiff appeals as of right from an Emmet Circuit Court order granting defendant Attorney General's motion for summary disposition and denying plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(10). Plaintiff initiated this action because of defendant's failure to provide six documents, which plaintiff had requested pursuant to the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.,* relating to the Governor's negotiations with three Indian tribes regarding casino gambling. We affirm.

The six documents fall into two categories: those that were delivered by the Governor's office to defendant for the purpose of seeking legal advice and those that were internal memoranda of defendant with regard to the legal advice sought by the Gover-

nor. The trial court held that the four letters delivered by the Governor's office to defendant were exempt from production under the attorney-client privilege exemption of the FOIA, MCL 15.243(1)(h); MSA 4.1801(13)(1)(h). The trial court further held that the internal memoranda of defendant were protected under the deliberative process exemption of the FOIA, MCL 15.243(1)(n); MSA 4.1801(13)(1)(n), with one of the memoranda also being protected by the attorney-client privilege. We agree with these determinations of the trial court.

As a preliminary matter, we note that plaintiff expends considerable effort arguing that the Governor and defendant did not enjoy an attorney-client relationship with regard to the documents. He contends that the Governor acted outside the scope of his authority in negotiating with the Indian tribes. He argues that because the Governor was acting outside the scope of his authority, his actions were plainly ultra vires and, thus, there could not have been a valid attorney-client relationship. Plaintiff does not cite any authority for the proposition that if the Governor's activities in negotiating nonbinding tribal-state compacts were outside the scope of his authority, no attorney-client relationship would exist. In fact, he fails to make any argument to support the proposition. Because plaintiff has failed to cite any authority for a proposition, we are not required to address whether there was an attorney-client relationship under the circumstances. *Magee v Magee*, 218 Mich App 158, 161; 553 NW2d 363 (1996). Nevertheless, we note that we disagree with plaintiff that there was no attorney-client relationship between defendant and the Governor.

The term "ultra vires" means outside the scope of authority. See *Senghas v L'Anse Creuse Public Schools*, 368 Mich 557, 560; 118 NW2d 975 (1962). Thus, if the Governor acts outside the scope of his authority, his actions are considered ultra vires. Our review reveals no identifiable authority that indicates that, if the Governor's actions were ultra vires, his communications with defendant regarding those activities would not be covered under the attorney-client privilege. Nevertheless, common sense would dictate that defendant's statutory duty[1] to represent the Governor would not extend to representation for illegal or clearly ultra vires activities. Accepting that there would be no valid attorney-client relationship if the Governor's actions were outside the scope of his authority, it is necessary to determine if the Governor's actions were clearly ultra vires or, rather, whether there was no possible basis for the Governor's authority. We hold that there is a reasonable foundation for the Governor's authority to negotiate tribal-state gaming compacts and, thus, his actions were not clearly ultra vires to the extent that an attorney-client relationship did not arise when he sought legal assistance from defendant.

The Governor is constitutionally authorized to present and recommend legislation. Const 1963, art 5, § 17. There is no prohibition in Michigan law that would bar the Governor's actions in negotiating a gaming compact and then presenting it to the Legislature. Several other jurisdictions have reached similar conclusions in addressing the precise issue whether a state governor has authority to negotiate gambling

---

[1] MCL 14.32; MSA 3.185.

compacts with Indian tribes pursuant to the federal Indian Gaming Regulatory Act (IGRA), 25 USC 2701 *et seq.*

In *State ex rel Stephan v Finney*, 251 Kan 559, 582-583; 836 P2d 1169 (1992), the court held that the governor had power to negotiate a gaming compact with an Indian tribe, but could not bind the state to the resulting terms of any compact. Absent "an appropriate delegation of power by the Kansas Legislature or legislative approval of the compact, the Governor had no power to bind the State to the terms" of the compact. *State ex rel Stephan v Finney*, 254 Kan 632, 635; 867 P2d 1034 (1994). In *State ex rel Clark v Johnson*, 120 NM 562; 904 P2d 11 (1995), the court recognized that the governor could not enter into a gaming compact solely on his own authority. It held that the governor lacked constitutional authority to bind the state by unilaterally entering into compacts. *Id.* at 576. However, the court also recognized that the legislature could authorize the governor to enter into a gaming compact *"or ratify his actions with respect to a compact he has negotiated . . . ." Id.* at 574 (emphasis added). Thus, although the governor could not bind the state, he could negotiate a compact subject to legislative ratification. Finally in *Narragansett Indian Tribe of Rhode Island v State*, 667 A2d 280 (RI, 1995), the court held that the governor lacked constitutional and legislative authority to bind the state to a compact negotiated by him. However, the court noted:

> We also take care to note that our opinion in no way suggests that the Governor, in his capacity as Chief Executive officer of this state, lacks the authority to advocate, to initiate, and to negotiate, short of executing, a tribal-state compact. All that we determine herein is that the Governor,

absent specific authorization from the General Assembly, had no express or implied constitutional right or statutory authority to finally execute and bind the state to such a compact by his execution thereof. [*Id.* at 282.]

Recently, this Court indicated that the Governor had the ability to negotiate and enter into compacts with an Indian tribe under the IGRA. In *Tiger Stadium Fan Club, Inc v Governor,* 217 Mich App 439; 553 NW2d 7 (1996), the Governor had been sued by Indian tribes to compel him to conclude a gaming compact. Subsequently, the Governor negotiated and entered into a consent judgment, which included a provision that certain gaming revenues would be paid into the Michigan Strategic Fund as long as the compact remained in effect. *Id.* at 443. "The consent judgment was to become effective *upon execution of compacts between the tribes and the Governor and approval of the compacts by resolution of the Legislature.*" *Id.* (emphasis added). Although the issue in *Tiger Stadium Fan Club* was different than that presented to this Court in this case (the plaintiffs in *Tiger Stadium Fan Club* were arguing that the Governor did not have authority to agree that revenues would be paid directly to the strategic fund), this Court ruled that the Governor "did not violate the Separation of Powers Clause in negotiating and effectuating the settlement." *Id.* at 454. The Governor negotiated and executed the compact and then presented it to the Legislature as part of the consent judgment. Thus, this Court acknowledged that the Governor has the ability to enter into compacts with Indian tribes, subject to the approval of the Legislature.

We emphasize that the Governor has executive power, Const 1963, art 5, § 1, and the power to suggest legislation, Const 1963, art 5, § 17. We also emphasize that there is no constitutional impediment to the Governor's negotiating with an Indian tribe where the product of his negotiations has no effect without legislative approval. We find that there are bases upon which the Governor had authority to negotiate with the Indian tribes on proposed compacts, which were subsequently presented to the Legislature for approval. For that reason, we cannot conclude that his actions were clearly ultra vires. Rather, we conclude that the Governor did not usurp legislative power because he did not attempt to bind the Legislature or the state to any terms in the compact. He did not enact legislation or force legislation on the Legislature. In its well-reasoned opinion, the trial court also recognized that the Governor did not exceed the scope of his authority when he conducted negotiations and discussions with the Indian tribes and later presented gaming compacts to the Legislature for its approval or rejection. We agree with the trial court's analysis.

Given that the Governor was acting within the scope of his authority in negotiating with the Indian tribes for a gaming compact and therefore had an attorney-client relationship with defendant, we next need to decide whether the four letters, which were forwarded to defendant for purposes of legal advice, were exempt from production under the FOIA. Three of the letters were received by the Governor's office from legal counsel for the tribes and were then forwarded to defendant. The fourth letter was a draft letter written by the Governor's office, which was to be

sent to the tribes' negotiators in order to outline the Governor's position on various issues related to the negotiations.

The FOIA requires a "public body" to disclose all public records that are not specifically exempt under the act. MCL 15.233(1); MSA 4.1801(3)(1); *Jackson v Eastern Michigan Univ Foundation*, 215 Mich App 240, 244; 544 NW2d 737 (1996). The Governor is not a "public body" as defined under the FOIA. MCL 15.232(d); MSA 4.1801(2)(d). Thus, the Governor is not required to disclose records pursuant to an FOIA request. Copies of the four letters sought by plaintiff could not have been obtained through the Governor's office, and plaintiff did not attempt to secure them through that office.

Plaintiff argues, however, that once the Governor forwarded the documents to defendant, a public body, plaintiff could obtain them via an FOIA request. He claims that the attorney-client privilege does not extend to third-party correspondence passed from client to attorney and that once the Governor forwarded the correspondence to defendant, he lost the right to prevent disclosure through the FOIA. We disagree, but caution that our ruling on this issue focuses only on defendant's right to claim a privilege under the FOIA where the Governor forwards documents prepared by a third party to defendant for the purpose of obtaining legal advice.

MCL 15.243(1)(h); MSA 4.1801(13)(1)(h) exempts the disclosure of documents under the FOIA if the documents are subject to the attorney-client privilege. The attorney-client privilege is designed to permit a client to confide in his attorney, knowing that his communications are safe from disclosure. *Fruehauf*

*Trailer Corp v Hagelthorn,* 208 Mich App 447, 449-450; 528 NW2d 778 (1995). The rationale behind the privilege is that "if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice." *Fisher v United States,* 425 US 391, 403; 96 S Ct 1569; 48 L Ed 2d 39 (1976). The privilege attaches only to confidential communications by the client to his attorney, which are made for the purpose of obtaining legal advice. *Fruehauf, supra* at 450. In addition, it applies only where necessary to achieve its purpose. *Fisher, supra.* The privilege does not, as was pointed out by the trial court, automatically shield documents given by a client to his counsel.

In *Fisher, supra* at 403-404, the Court set forth basic principles related to whether third-party documents forwarded by a client to his attorney in connection with a request for legal advice were privileged. It reaffirmed that

> pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice.

Such a result does not discourage a client from seeking advice because the documents do not become easier to obtain after being forwarded to the attorney.

The *Fisher* Court ruled that if the documents were not obtainable while in the exclusive possession of the client, they would not be obtainable from the cli-

ent's attorney. *Id.* at 404.[2] A contrary result would suppress the client's willingness to transfer possession to the lawyer when seeking legal advice. *Id.*

We adopt, as did the trial court, the reasoning of the *Fisher* Court.[3] The four letters at issue, three being third-party correspondence and the fourth being a draft written by the Governor's office, were forwarded to defendant for the specific purpose of obtaining legal advice. Pursuant to the FOIA, these letters were not obtainable from the Governor while they were in his possession. Therefore, we hold that they are not obtainable by way of an FOIA request from defendant, the Governor's attorney. To hold otherwise would have a chilling effect on the Governor's ability to seek advice from his counsel related to correspondence directed to his office and correspondence that may be issued by his office. The four letters clearly fall within the FOIA exemption based on the attorney-client privilege.[4]

---

[2] In *Fisher*, the clients claimed that the documents at issue were privileged in their hands by reason of the Fifth Amendment.

[3] In so doing, we note that the *Fisher* Court did not address any issues related to freedom of information requests. Rather, it focused on the ability to obtain documents by way of subpoena duces tecum or summons. Nevertheless, because the rationale behind the attorney-client privilege is the same whether the request for documents is by way of summons, subpoena, or the FOIA, we adopt the *Fisher* Court's sound reasoning.

[4] Plaintiff argues that the draft letter written by the Governor's office was not protected by the attorney-client privilege. He claims that documents forwarded to an attorney, which the author intends to make public, are never privileged because there is no expectation of privacy. In this case, there was an uncontradicted affidavit that the letter was a draft at the time it was sent to defendant for legal assistance. There is no evidence or testimony that the Governor intended to make the draft letter public. Moreover, although a final letter was sent to the tribal negotiators, it was never made public or intended to be made public according to the record presented before this Court. Thus, plaintiff's argument fails.

In making our ruling, we note that plaintiff's reliance on *Hubka v Pennfield Twp*, 197 Mich App 117; 494 NW2d 800 (1992), rev'd in part on other grounds 443 Mich 864 (1993),   is misplaced. The issue in *Hubka* focused on whether facts *gathered by an attorney* for the defendant from other sources and *given to the client* were privileged under the FOIA. The Court held that under the circumstances they were because the facts were received from the defendant's own employees, and agents or employees of an organization are covered by the privilege. *Id.* at 121-122. This Court noted that, in general, facts that are acquired by an attorney from persons or sources other than his clients are not privileged. *Id.* at 121. Here, the Governor, and not defendant, came into possession of the letters, which were not subject to disclosure while in the Governor's hands. The Governor then sent the letters to defendant solely for the purpose of seeking legal advice. The letters did not contain facts gathered by defendant and they were not given to the Governor by defendant. *Hubka* has no application to the issue whether the four letters were protected from disclosure under the FOIA.

Our final inquiry involves whether plaintiff was entitled to receive two internal memoranda or portions of those memoranda from defendant's office. One memorandum was written by an assistant attorney general to a deputy attorney general. According to an affidavit, the memorandum reiterated discussions between the assistant and the Governor's office. It also contained recommendations, opinions, and strategies regarding the tribal-state compacts and communicated the assistant's thoughts and impressions. The other memorandum was handwritten and

was prepared by an assistant attorney general for review by his superior.

MCL 15.243(1)(n); MSA 4.1801(13)(1)(n) provides:

> (1) A public body may exempt from disclosure as a public record under this act:
>
> \*     \*     \*
>
> (n) Communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. This exemption does not apply unless the public body shows that in the particular instance the public interest in encouraging frank communications between officials and employees of public bodies clearly outweighs the public interest in disclosure. . . .

Defendant produced affidavits that established that the entire contents of both memoranda were preliminary, nonfactual, and part of the deliberative activity necessary to defendant. Plaintiff submitted nothing to refute that the memoranda were not covered under the deliberative process exemption. His claim that one of the affidavits demonstrates that one of the memoranda contains purely factual terms is not supported by our review of the record. Moreover, we rule that the public interest in encouraging frank communications between officials and employees in defendant's office clearly outweighs the public interest in disclosure in this case. We agree with the affidavit statement of one of defendant's employees:

> The large number of assistants and divisions, the diverse location of the divisions, the vast number of matters under consideration at any given moment, the pressure of court imposed deadlines, and the need to fully consider and eval-

uate various concerns make it absolutely essential that the Department of Attorney General utilize written memoranda as a means of communication to assist in decision making.

The release to the public of the internal memoranda of the type at issue in this case would discourage the preparation of such memoranda and would impact negatively on the quality of the department's decision-making process with detrimental effect on the legal services provided to state agencies as well as on the public's interest.

The memoranda at issue fell within the exemption provided by subsection 13(1)(n) and, therefore, it was not necessary for defendant to produce them pursuant to plaintiff's FOIA request.

Not only do we hold that both of the internal memoranda were exempt from disclosure under subsection 13(1)(n) of the FOIA, but we also hold that one of the memoranda was exempt under subsection 13(1)(h) because of attorney-client privilege. The memorandum written by an assistant attorney general to his deputy, which reiterated discussions between the assistant and the Governor's office, is protected by the attorney-client privilege. An affidavit indicates that the memorandum included the content of confidential discussions between the Governor's office and the assistant, as well as recommendations, opinions, and strategic advice that was given by the assistant attorney general to his client. Confidential client communications, along with opinions, conclusions, and recommendations based on those communications, are protected by the attorney-client privilege because they "are at the core of what is covered by the privilege." *Hubka, supra* at 122. The record presented in this case does not indicate whether the second memorandum contained confidential discussions between attorney and client and, therefore, we are unable to

determine if that memorandum was exempt from disclosure on the basis of the attorney-client privilege. Given, however, that it is exempt under subsection 13(1)(n), this issue is nondispositive.

Next, we also disagree with plaintiff's argument that defendant may have been required to produce the memoranda pursuant to MCL 15.241(1)(c); MSA 4.1801(11)(1)(c). Plaintiff claims that an in camera review should have been conducted to determine if the documents fell within that section, which provides that a state agency shall publish and make available to the public

> [o]ther written statements which implement or interpret laws, rules, or policy, including but not limited to guidelines, manuals, and forms with instructions . . . .

No in camera review was necessary to determine if the memoranda qualified for disclosure under § 11 of the FOIA. Subsection 11(4) specifically provides that § 11 does not apply to public records that are exempt from disclosure under § 13. Both of the memoranda were exempt from disclosure as was discussed above.

Finally, we refuse to entertain plaintiff's argument that if defendant had honored requests from various members of the Legislature for documents, which included the internal memoranda, the documents would have become public and would not have been exempt under the FOIA. Because defendant never provided the Legislature with the requested information, plaintiff's argument presents a hypothetical situation. We note with interest that there is no evidence that the members of the Legislature who did not receive the internal memoranda initiated any action in an attempt to obtain them.

Affirmed.