**WRENCH LLC, a Michigan Limited Liability Company; Joseph Shields; and Thomas Rinks, Plaintiffs,**

v.

**TACO BELL CORP., a foreign corporation, Defendant.**

**No. 1:98–CV–45.**

United States District Court, W.D. Michigan, Southern Division.

June 6, 2002.

Douglas A. Dozeman, Valerie P. Simmons, Daniel P. Ettinger, Warner, Norcross & Judd LLP, Grand Rapids, MI, for plaintiffs.

Richard J. O'Brien, Paul E. Veith, Sidley & Austin, Chicago, IL, Randall G. Litton, Price, Heneveld, Cooper, Dewitt, Grand Rapids, MI, Arthur S. Friedman, Friedman, Wang & Bleiberg, PC, New York City, Jamie

L. Secord, Sidley Austin Brown & Wood, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

QUIST, District Judge.

The Court has read the documents discussed at the May 8, 2002, Rule 16 conference, which have been submitted in unredacted form by Defendant, Taco Bell Corp. ("Taco Bell"), for *in camera* review. Taco Bell has divided the documents into three groups. Group I contains two of a series of nine pages Taco Bell's counsel received from Charles Warner (Werner 006 and Werner 007), an attorney who represented Ed Alfaro ("Alfaro") in the negotiation of his severance package from Taco Bell. Group II contains documents from the files of Frank Tucker, Director of People Support (Human Resources), which relate to the negotiation of Alfaro's severance package. Finally, Group III contains a document Taco Bell believes came from Alfaro's file. The document is a letter to Frank Tucker from attorney Charles Warner regarding negotiations over Alfaro's severance package. The Court's rulings on the documents are as follows:

### I.  Group I

The document in Group I contains two redactions on Werner 006 and one redaction on Werner 007 based upon Taco Bell's assertion that the redacted statements are subject to the attorney-client privilege. The first redaction on Werner 006 concerns a statement by Richard Smith, Taco Bell's general counsel, to Vada Hill, and the second redaction on that page concerns a conversation between Vada Hill and outside lawyers. The redaction on Werner 007 concerns statements made by Richard Smith to Alfaro. Taco Bell contends that even though Alfaro, who was then a Taco Bell employee, shared the privileged information with his attorney—a third party—in connection with negotiations of Alfaro's severance package, there was no waiver of the privilege because Alfaro was a lower-level employee without power to waive the privilege on behalf of Taco Bell. Plaintiffs contend that the privilege was waived, even if Alfaro had no authority to do so, because

Taco Bell's disclosure of the privileged information to Alfaro constituted a waiver.

The first question the Court must resolve is whether the redacted statements are protected by the attorney-client privilege because if they are not, that is the end of the analysis. Because this is a diversity case governed by Michigan law, the Court must apply Michigan law in determining whether the privilege applies. Fed.R.Evid. 501. *See also Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1513 (6th Cir.1990). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Under Michigan law, the attorney-client privilege attaches to confidential communications made by the client to his attorney for the purpose of obtaining legal advice. *McCartney v. Attorney Gen.*, 231 Mich.App. 722, 731, 587 N.W.2d 824, 828 (1998)(per curiam). The privilege also generally protects communications from an attorney to a client, including the attorney's opinions, conclusions, and recommendations based upon the facts furnished by the client. *Hubka v. Pennfield Township*, 197 Mich.App. 117, 121–22, 494 N.W.2d 800, 802 (1992)(per curiam). In addition, "where the attorney's 'client is an organization, the privilege extends to those communications between attorneys and *all agents* or *employees* of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication.'" *Id.* at 121, 494 N.W.2d at 802 (quoting *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 253 n. 24 (D.C.Cir.1977)). *Cf. Upjohn Co.*, 449 U.S. at 394–97, 101 S.Ct. at 685–86 (rejecting the "control group" test for determining the extent of the privilege for corporate clients and holding instead that the privilege extends to communications by lower-level employees regarding matters within the scope of their corporate duties made at the direction of their superiors and with knowledge that the information was being sought in order to secure legal advice). The privilege is narrow. *Fruehauf Trailer Corp.*

*v. Hagelthorn,* 208 Mich.App. 447, 450, 528 N.W.2d 778, 780 (1995)(per curiam). Thus, while confidential communications between attorney and client are protected, the privilege does not extend to facts included in such communications. *Id.* at 451–52, 528 N.W.2d at 781 (citing *Upjohn Co.*).

■ The Court concludes that the first redaction on Werner 006 regarding a discussion between Vada Hill and corporate attorney Richard Smith is protected by the attorney-client privilege because it indicates the content of a legal opinion Richard Smith conveyed to Vada Hill. In contrast, the Court concludes that the second redaction is not protected because it reveals only that Vada Hill had a discussion with outside lawyers, apparently arranged by Peter Stack. The redacted statement does not indicate the content of the discussion, nor does it necessarily show that legal advice was given. Finally, the Court concludes that the redaction on Werner 007 is protected because it repeats legal advice Richard Smith gave directly to Alfaro.

■ Having concluded that two of the three redactions are covered by the privilege, the Court must now determine whether Alfaro's inclusion of those statements in the materials he furnished to his personal attorney constituted a waiver of the attorney-client privilege. The Court has not found any Michigan case discussing the parameters of waiver by a corporate employee, and the parties have not cited any Michigan case on the subject. In particular, the issue is whether Alfaro had authority to waive the privilege for Taco Bell. In general, the privilege belongs to the corporation and may be asserted or waived only by those with authority to do so—typically the officers and directors. *United States v. Chen,* 99 F.3d 1495, 1502 (9th Cir.1996)(quoting *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985)). *See also Velsicol Chem. Corp. v. Parsons,* 561 F.2d 671, 674–75 (7th Cir.1977)(concluding that a corporate officer who was senior house counsel had authority to waive the privilege on behalf of the corporation); *Milroy v. Hanson,* 875 F.Supp. 646, 649–50 (D.Neb.1995)(noting that a lone director is without authority to waive the privilege in the face of the board's decision to the contrary).

■ There is no dispute that Alfaro was a lower-level employee without authority to waive the privilege on behalf of Taco Bell. Plaintiffs argue, however, that even if Alfaro was a lower-level employee, Taco Bell waived the privilege by sharing the information with Alfaro. Plaintiffs cite *Verschoth v. Time Warner, Inc.,* No. 00CIV1339AGSJCF, 2001 WL 286763 (S.D.N.Y. Mar.22, 2001), *adhered to as amended by,* 2001 WL 546630 (S.D.N.Y. May 22, 2001), in support of their argument. In *Verschoth,* the plaintiff, a former writer for Sports Illustrated Magazine, a Time Warner publication, sought to obtain discovery regarding legal advice from Time Warner's legal department which Sports Illustrated executives shared with a freelance editor. The court observed that while corporate executives may share legal advice with lower-level corporate employees without waiving the privilege, the privilege extends only to those employees with a "need to know," including those employees with general policy-making authority and those with specific authority for the subject matter of the legal advice. *Id.* at *2. As an example, the court noted that within an automobile company seeking to make a design change to avoid liability, the vice-president of design as well as the engineer who would actually redesign the defective part would be employees with a need to learn the legal basis for the design change, whereas an assembly line worker would need to know the new production procedure but would not need to know the legal background for the change. *Id.* The court concluded that the freelance editor was more like the assembly line worker because he was not an employee, he had no managerial responsibility, and he had no need to know the information generated by the legal department. *Id.* at *3. While this Court agrees with the reasoning in *Verschoth* in general, the circumstances here are different. The first redacted statement concerned a Taco Bell licensee, and Alfaro's department at Taco Bell was in charge of developing the licensing program. Thus, Alfaro was comparable to the engineer in the *Verschoth* court's example because he was responsible for the

specific subject matter of the communication. The second redacted statement presents an entirely different situation because it pertains to advice Alfaro received directly from Taco Bell's general counsel relating to Alfaro's intra-corporate dealings. Thus, there was no waiver.

## II. Group II

The documents in Group II relate solely to the negotiations between Alfaro and Taco Bell regarding Alfaro's severance package. Taco Bell has not asserted any privilege with respect to the redactions. It argues, however, that the redactions are proper because the information is irrelevant to the subject matter of this lawsuit. In addition, Taco Bell asserts that because the information relates solely to Alfaro's separation from Taco Bell, Plaintiffs could use it to agitate and/or embarrass Alfaro in his deposition. In response, Plaintiffs argue that the information is discoverable under Fed.R.Civ.P. 26 and is relevant to Alfaro's credibility. In addition, Plaintiffs point out that if Taco Bell is concerned about confidentiality and Alfaro's privacy interests, it can produce the information subject to the parties stipulated protective order.

The Court concludes that the information in the documents is relevant or may reasonably lead to the discovery of admissible evidence and, thus, is discoverable under Rule 26. While it is true that the information is highly personal to Alfaro, the information may also have some bearing upon his credibility as a witness or may shed more light upon the reasons for Alfaro's departure (which may also bear some relationship with Plaintiffs' claims). In addition, Taco Bell may protect the confidentiality of those documents by producing them pursuant to the stipulated protective order. Finally, if Plaintiffs attempt to use the information in the documents to harass or embarrass Alfaro in his deposition, Taco Bell or Alfaro may move pursuant to Fed.R.Civ.P. 30(d) for an order terminating or limiting the scope of the depo-

sition. Thus, Taco Bell will be ordered to produce all documents in Group II to Plaintiffs in unredacted form. The Court's conclusion also applies to the document in **Group III**, which is included among the documents in Group II.

Therefore,

**IT IS HEREBY ORDERED** that:

1. With respect to Group I, the information contained in both the first redaction on Werner 006 and the redaction on Werner 007 is subject to the attorney-client privilege but the information contained in second redaction on Werner 006 is not covered by the privilege. Therefore, Taco Bell shall produce Werner 006 to Plaintiffs in a form that includes the information in the second redaction.

2. Taco Bell shall produce to Plaintiffs all documents in Group II and III in unredacted form.[1]

---

1. The Court declines to provide any general guidelines with respect to any future discovery as requested by Taco Bell because the nature and extent of any potential dispute cannot be determined at this time. Therefore, the Court concludes that it would be most helpful to deal with specific discovery issues as they arise. However, the Court's rulings herein should serve to provide some guidance in determining how the Court may resolve such disputes.