# STATE OF MICHIGAN

# COURT OF APPEALS

LITTRELL WILLIAMS-INNER,

        Plaintiff-Appellant,

v

LIBERTY MUTUAL INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
May 12, 2015

No. 319217
Wayne Circuit Court
LC No. 11-003613-NI

LITTRELL WILLIAMS-INNER,

        Plaintiff-Appellant,

v

LIBERTY MUTUAL INSURANCE COMPANY,

        Defendant-Appellee.

No. 320677
Wayne Circuit Court
LC No. 11-003613-NI

Before: TALBOT, C.J., and CAVANAGH and METER, JJ.

PER CURIAM.

In these consolidated appeals,[1] Littrell Williams-Inner appeals as of right from two orders of the trial court. In the first order, the trial court, as a discovery sanction, ordered that Williams-Inner could not present expert opinion testimony at trial. In the second order, the trial court awarded Liberty Mutual Insurance Company ("Liberty") $149,711 in attorney fees. For the reasons discussed below, we vacate the trial court's award of attorney fees and remand for redetermination of the award. In all other respects, we affirm.

---

[1] *Williams-Inner v Liberty Mutual Ins Co*, unpublished order of the Court of Appeals, entered November 12, 2014 (Docket No.'s 319217, 320677).

# I. BACKGROUND

On November 26, 2010, Williams-Inner was a passenger in a vehicle that was struck by another motorist. On March 25, 2011, Williams-Inner filed a complaint alleging that Liberty, her no-fault insurer, unreasonably refused to pay her personal protection benefits for injuries arising out of the accident. Approximately one month before trial was scheduled to begin, the trial court granted Liberty's motion to preclude Williams-Inner from presenting the opinions of expert witnesses as a discovery sanction. The matter proceeded to trial. The jury found that Williams-Inner was not entitled to benefits and that her claim against Liberty was at least partially fraudulent or excessive. Liberty then filed a motion seeking attorney fees and costs of approximately $190,000. A hearing was held, at which the trial court expressed some concern over the hourly rates sought by Liberty for its lead counsel, Karen Magdich, and a paralegal, Kristen Kairys. The trial court asked Liberty to submit a supplemental brief with reduced hourly rates for these individuals. Liberty did so, and after a second hearing, the trial court accepted Liberty's new calculations and entered an order awarding Liberty $149,711 in attorney fees. The trial court did not award Liberty its requested costs.

# II. DISCUSSION

## A. DISCOVERY SANCTION

Williams-Inner first argues that the trial court abused its discretion when it precluded her from presenting expert witness testimony at trial. We disagree. "Discovery sanctions are reviewed for an abuse of discretion."[2] An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes.[3]

In a discovery request served on Williams-Inner in April 2011, Liberty asked Williams-Inner to "[s]tate the names and addresses of any and all proposed expert witnesses and the names and addresses of all witnesses you intend to have testify in [sic] your behalf in this case[,] whether in person or by deposition." Liberty also requested that Williams-Inner disclose the qualifications of proposed experts, the subject matter of any expert's testimony, the substance of their opinions, the facts upon which these opinions were based, and the identity and location of any reports prepared by each expert. When Williams-Inner did not timely respond to its interrogatories, Liberty filed a motion to compel her responses. The trial court then entered a stipulated order requiring Williams-Inner to respond to the requests "on or before July 21, 2011." Despite stipulating to this order, Williams-Inner did not provide her responses until July 28, 2011. In response to Liberty's request for information regarding her expert witnesses, Williams-Inner stated only, "Plaintiff will file [a] Witness List in accordance with the Court's Scheduling Order." On April 17, 2012, the day her witness list was due, Williams-Inner filed a witness list

---

[2] *Dean v Tucker*, 182 Mich App 27, 32; 451 NW2d 571 (1990).

[3] *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

which named over 20 treating physicians by name or description, along with approximately 60 other witnesses. However, this witness list did not identify any witnesses as expert witnesses.

Largely based on a mistaken belief that Williams-Inner had never filed a witness list, on April 26, 2013, Liberty filed a motion seeking dismissal of the suit.[4] This motion also noted that Williams-Inner had not timely responded to Liberty's interrogatories or identified any expert witnesses, and asked that as an alternative sanction, the trial court preclude Williams-Inner from "calling expert witnesses at trial for [her] failure to disclose potential experts as well as any opinions they may hold and the basis for said opinions . . . ." Williams-Inner filed a response in which she asserted that she would supplement any interrogatory responses as needed, but that no such supplementation was necessary at that time because she had not "identified and/or retained any experts regarding this matter." She asserted that she would supplement her interrogatory responses if any experts were retained.

The motion was heard on May 3, 2013. At the hearing, Liberty acknowledged that Williams-Inner had timely filed a witness list, but noting that trial was set to begin on June 3, 2013, asked the court to preclude Williams-Inner from presenting expert opinion testimony. Williams-Inner stated that she had not retained any "outside independent experts," but argued that the treating physicians identified in her witness list could be presented as expert witnesses if the court found them qualified. The trial court ruled that because Williams-Inner had yet to identify any expert witnesses, she could not present expert opinion testimony at trial. On May 28, 2013, less than a week before trial was scheduled to begin, Williams-Inner provided complete responses to Liberty's interrogatory requests.

Under the Michigan Court Rules, "A party may through interrogatories require another party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter about which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."[5] "[T]he purposes of pretrial discovery regarding experts to be used as witnesses at trial [are] narrowing the issues, preparation of cross-examination[,] and the elimination of surprise at trial . . . ."[6] As this Court has explained:

> Pursuant to MCR 2.302(E)(1)(a)(*ii*), a party has "a duty seasonably to supplement" his or her responses to discovery requests to include the identity of additional expert witnesses. The court may, in its discretion, sanction a party under MCR 2.313(B)(2) for failing to reveal the identity of an expert witness in a

---

[4] This belief was the result of the court clerk having docketed Williams-Inner's witness list as a "miscellaneous pleading." When Magdich and her firm substituted for Liberty's former counsel in March 2013, Magdich apparently relied only on the register of actions, and seeing no witness list filed by Williams-Inner, filed the motion.

[5] MCR 2.302(B)(4)(a)(*i*).

[6] *Nelson Drainage Dist v Bay*, 188 Mich App 501, 506-507; 470 NW2d 449 (1991).

timely fashion.  As a sanction under that subrule, the court may prohibit the party from "introducing designated matters into evidence . . . ."[7]

However, before sanctioning a party for a discovery violation, the trial court must consider several factors:

> Among the factors that should be considered in determining the appropriate sanction are: (1) whether the violation was wilful or accidental, (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses), (3) the prejudice to the defendant, (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice, (5) whether there exists a history of plaintiff engaging in deliberate delay, (6) the degree of compliance by the plaintiff with other provisions of the court's order, (7) an attempt by the plaintiff to timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice. This list should not be considered exhaustive.[8]

Under the circumstances, the trial court's sanction was not an abuse of discretion. Williams-Inner's refusal to provide appropriate responses to Liberty's interrogatories was no accident.  Rather, she agreed to respond by a certain date, filed responses a week after that date passed, and when she did, answered only that she would file a witness list in the future.  Once it was filed, this witness list identified no witnesses as experts.[9]  This conduct left Liberty to guess which witnesses, if any, might be called as experts, and provided absolutely no insight into the substance of any potential expert testimony.  It also prevented Liberty from deposing, investigating, or otherwise preparing to defend against these witnesses.  Williams-Inner only attempted to cure the error the week before trial was to begin, an effort that was far from timely, particularly given that the trial court had already ordered that she could not present expert witness testimony.  Moreover, the trial court imposed a narrow sanction.  The trial court only prohibited Williams-Inner's treating physicians from providing expert opinion testimony.  The witnesses remained free to testify to the existence of Williams-Inner's injuries and what treatment she was provided.  This sanction was proportionate to Williams-Inner's failure to

---

[7] *Dorman v Twp of Clinton*, 269 Mich App 638, 655-656; 714 NW2d 350 (2006) (citations omitted).

[8] *Dean*, 182 Mich App at 32-33 (citations omitted).

[9] Williams-Inner argues that her identification of witnesses as treating physicians in her witness list was sufficient to put Liberty on notice that any of these witnesses could be called as experts. Yet in her response to Liberty's motion, a response filed a year after she filed her witness list, Williams-Inner explained her failure to supplement her interrogatory responses by asserting that she had yet to identify any expert witnesses herself.  We fail to understand how Liberty could be expected to know the identity of Williams-Inner's expert witnesses during a time when Williams-Inner apparently did not.

divulge the existence or nature of any potential expert testimony. Under the circumstances, the trial court's sanction was not an abuse of discretion.[10]

Williams-Inner presents several arguments on appeal, all of which lack merit. She first argues that the record does not reflect that the trial court gave any consideration to the *Dean* factors. With regard to discovery sanctions, "the record should reflect that the trial court gave careful consideration to the factors involved and considered all of its options in determining what sanction was just and proper in the context of the case before it."[11] At the motion hearing, the trial court did not explicitly reference any particular factor. However, it did explicitly deny the motion to dismiss, demonstrating that the court considered other options with regard to the appropriate sanction. Given the nature of the discovery violation at issue here, the narrow sanction imposed demonstrates that the trial court considered the particular circumstances of this case before determining what sanction was appropriate. Thus, while not explicit, the record demonstrates that the trial court considered the relevant factors and its options before it decided the appropriate sanction.

Further, if a trial court fails to adequately address the *Dean* factors, the proper remedy is to remand to the trial court for reconsideration.[12] Such a remedy would not be appropriate here because the record reflects that the trial court also considered the relevant factors in response to Williams-Inner's motion for reconsideration. Williams-Inner's motion addressed each of the *Dean* factors. The trial court allowed oral argument on the motion, where both parties extensively discussed Williams-Inner's discovery responses and whether these responses gave Liberty an adequate opportunity to prepare with regard to Williams-Inner's potential experts. The trial court noted that Williams-Inner had not identified any of her treating physicians as experts. The trial court stated that this conduct left Liberty to guess which witnesses might be called as experts, and found that this was "neither fair nor appropriate." On the whole, the record reflects that the trial court considered the relevant factors and potential options when deciding the issue.

Relying on the Federal Rules of Civil Procedure and cases of the federal courts interpreting these rules, Williams-Inner next argues that identifying her witnesses as treating physicians was sufficient to put Liberty on notice that she intended to call any of these witnesses as experts. Under the Michigan Court Rules, when filing a witness list, parties must specify

---

[10] See *Dorman*, 269 Mich App at 654-655 (the trial court did not abuse its discretion by refusing to allow the plaintiff to present an expert witness not disclosed until two months before trial); *Bellok v Koths*, 163 Mich App 780; 415 NW2d 18 (1987) (the trial court did not abuse its discretion by dismissing the plaintiffs' action as a discovery sanction; the plaintiffs failed to provide complete responses to interrogatory requests regarding expert witnesses until the day of the hearing on the defendants' motion to dismiss for failure to respond to the requests).

[11] *Dean*, 182 Mich App at 32.

[12] *Adams v Perry Furniture Co (On Remand)*, 198 Mich App 1, 17-18; 497 NW2d 514 (1993), overruled in part on other grounds *Allied Electric Supply Co, Inc v Tenaglia*, 461 Mich 285, 289 (1999).

-5-

"whether the witness is an expert, and the field of expertise."[13] It is Michigan's court rules, not the federal rules, which apply here. Moreover, the federal cases cited do not stand for the proposition that identifying witnesses as treating physicians is akin to identifying them as experts. Rather, these cases hold that treating physicians need not file mandatory disclosures pursuant to FR Civ P 26(a)(2) because, among other reasons, the testimony of a treating physician regarding the cause of injuries is not necessarily expert opinion testimony.[14] Williams-Inner explicitly asked the trial court to admit the testimony of her treating physicians as expert opinion testimony. Regardless, even if identifying her treating physicians could be considered adequate to identify them as experts, Williams-Inner still failed to provide any information beyond the names of these witnesses, such as their qualifications, areas of expertise, expected testimony, or basis for their opinions, until the week before trial was to begin. Liberty requested and was entitled to this information.[15] Identifying her treating physicians was an insufficient response to Liberty's interrogatory request, and accordingly, sanctions were permissible.[16]

Williams-Inner points out that Liberty similarly identified her treating physicians in its witness list without identifying those witnesses as experts. The explanation for this is quite simple: Liberty did not intend to call Williams-Inner's treating physicians as expert witnesses. Rather, Liberty specifically identified over 30 potential expert witnesses in its witness list, as was required.[17] Williams-Inner also suggests that the trial court held Liberty to a different standard by denying her motion for a default judgment premised on a purported discovery violation, a motion filed the same day the trial court heard Liberty's motion. As the trial court noted, Williams-Inner never filed a motion to compel discovery. Liberty's failure to respond appeared to be an inadvertent mistake. Once Liberty was made aware of the problem by the motion, it provided appropriate responses. Williams-Inner also provided little explanation of how she was prejudiced by the failure. Indeed, she suggested that the trial court could order Liberty to provide responses within seven days as an alternative to a default judgment. Williams-Inner has not demonstrated that the trial court treated the parties differently.

Williams-Inner argues that she was denied a fair opportunity to litigate the issue because, at the motion hearing, Liberty changed the thrust of its motion from one arguing that no witness list had been filed to one arguing for exclusion due to the failure to respond to interrogatories. Liberty's motion specifically noted that Williams-Inner had not provided complete answers to

---

[13] MCR 2.401(I)(1)(b). Pursuant to MCR 2.401(I)(2), "The court may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except on good cause shown."

[14] See, e.g., *McCloughan v City of Springfield*, 208 FRD 236, 240-242 (2002). There also appears to be a split of authority in the federal courts on this issue, with some courts holding that treating physicians are experts who must file mandatory disclosures pursuant to FR Civ P 26(a)(2). See *id*. at 241-242 (collecting cases).

[15] MCR 2.302(B)(4)(a)(*i*).

[16] *Dorman*, 269 Mich App at 655-656.

[17] MCR 2.401(I)(1)(b).

the interrogatory requests. Williams-Inner responded that her interrogatory responses needed no supplementation because she did not intend to call any expert witnesses. Williams-Inner was clearly aware of this issue, and was not denied an opportunity to fairly litigate it. Moreover, Williams-Inner was given ample opportunity to argue the issue when the trial court heard arguments on her motion for reconsideration. On the whole, Williams-Inner's arguments fail to demonstrate that the trial court abused its discretion.[18]

## B. ATTORNEY FEES[19]

Williams-Inner next argues that the trial court erred by awarding attorney fees to Liberty. We agree. "This Court generally reviews for an abuse of discretion a trial court's decision to award attorney fees and the determination of the reasonableness of the fees."[20] A trial court's factual findings are reviewed for clear error.[21] "There is clear error when there is no evidentiary support for the factual findings or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake."[22]

The trial court committed several errors in its award of attorney fees. In *Smith v Khouri*, our Supreme Court articulated a list of six factors to be considered when making such a determination (the *Wood* factors):

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.[23]

In addition, trial courts may rely on the factors provided by the Michigan Rules of Professional Conduct, some of which overlap the *Wood* factors:

---

[18] Finding no abuse of discretion in this regard, we also reject Williams-Inner's contention that the award of attorney fees must be reversed due to this alleged error.

[19] Williams-Inner also argues that the trial court erred by awarding Liberty costs in addition to the award of attorney fees. Liberty sought $149,711 in attorney fees and approximately $8,500 in taxable costs. The trial court only awarded $149,711 in attorney fees. As the trial court did not award Liberty any amount in taxable costs, Williams-Inner's argument is without merit. And as Liberty has not raised the issue on appeal, we are not faced with the question of whether the trial court's decision not to award costs was correct.

[20] *Augustine v Allstate Ins Co*, 292 Mich App 408, 424; 807 NW2d 77 (2011).

[21] *Id*.

[22] *Id*. (quotation marks, brackets, and citation omitted).

[23] *Smith v Khouri*, 481 Mich 519, 529; 751 NW2d 472 (2008), quoting *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982).

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.[24]

In *Smith*, our Supreme Court refined the process required when determining an award of attorney fees in an effort to "lead to greater consistency in awards."[25] As our Supreme Court explained:

> We hold that a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services, i.e., factor 3 under MRPC 1.5(a). In determining this number, the court should use reliable surveys or other credible evidence of the legal market. This number should be multiplied by the reasonable number of hours expended in the case (factor 1 under MRPC 1.5[a] and factor 2 under *Wood*). The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee. . . . Thereafter, the court should consider the remaining *Wood*/MRPC factors to determine whether an up or down adjustment is appropriate. And, in order to aid appellate review, a trial court should briefly discuss its view of the remaining factors.[26]

In this case, rather than begin by determining what "fee [was] customarily charged in the locality for similar legal services,"[27] the trial court began with the hourly fees requested by Liberty, fees that were far above the average fees charged by similarly situated attorneys.[28] The

---

[24] *Id*. at 529-530, quoting MRPC 1.5(a).

[25] *Id*. at 530-531.

[26] *Id*.

[27] *Id*. at 530.

trial court also failed to adequately discuss the relevant factors that would warrant a deviation from the customary fee in the locality. As this Court has explained:

> A meaningful application of the factors is more than a recitation of those factors prefaced by a statement such as "after careful review of the criteria the ultimate finding is as follows . . . ." Similarly, an analysis is not sufficient if it consists merely of the recitation of the factors followed by a conclusory statement that "the trial court has considered the factors and holds as follows . . ." without clearly setting forth a substantive analysis of the factors on the record. The trial court should consider the interplay between the factors and how they relate to the client, the case, and even the larger legal community.[29]

The trial court did not specifically reference any of the factors discussed above. Rather, it made only conclusory statements regarding Magdich and her co-counsel, Allison Lazette, that seem to refer to a few relevant factors.[30] Liberty also asserted that 10 other associate attorneys worked on the case and sought fees for their work. The trial court never discussed any of these attorneys, yet it accepted Liberty's request that the hours worked by these attorneys be charged to Williams-Inner at the same rate as Lazette, $300 an hour. The trial court's failure to make specific findings regarding the reasonableness of the hourly fee charged by each attorney was erroneous.[31]

The trial court also erred with respect to its determination of how many hours were reasonably spent by Liberty's attorneys defending the case. When Williams-Inner challenged the reasonableness of the number of hours claimed by Liberty, Liberty asserted that its billing records were protected by the attorney-client privilege. The trial court made no explicit ruling on this assertion of privilege, but chose to review the billing records *in camera*. After reviewing the records submitted by Liberty, the trial court made only a conclusory statement that the number of hours claimed was reasonable. This procedure was insufficient. As our Supreme Court has explained:

---

[28] In support of its motion for attorney fees, Liberty attached the State Bar of Michigan's 2010 Economics of Law Practice Attorney Income and Billing Rate Summary Report. According to this report, the median hourly rate for managing partners, such as Magdich, was $250, while the median hourly rate for associates was $195. This same report indicated that the median hourly rate for attorneys in the field of insurance law was $175. Attorneys in the county where Magdich's practice is located had a median hourly rate of $200. The trial court awarded fees based on an hourly rate of $400 for Magdich and $300 for all other associate attorneys.

[29] *Augustine*, 292 Mich App at 436.

[30] For example, regarding Magdich, the trial court stated, "you do remarkable work." With regard to Lazette's requested hourly fee of $300, the trial court asked her how long she had been in practice, and after Lazette stated she had been practicing for 7 years, stated, "Okay. That's not unreasonable."

[31] See *Augustine*, 292 Mich App at 439 (directing the trial court, on remand, "to make specific findings, consistent with *Smith*, for each attorney whose fees plaintiff sought to recover.").

In considering the time and labor involved (factor 1 under MRPC 1.5[a] and factor 2 under *Wood*) the court must determine the reasonable number of hours expended by each attorney. The fee applicant must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness. The fee applicant bears the burden of supporting its claimed hours with evidentiary support. If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence.[32]

The trial court's *in camera* review of billing records denied Williams-Inner any meaningful opportunity to challenge the reasonableness of the hours Liberty claimed. This procedure also deprives this Court of any meaningful review of the trial court's finding that the hours expended were reasonable. Moreover, the trial court's conclusory finding that these hours were reasonable was insufficient. The trial court's analysis must do more than state that it has considered the issue and made a particular finding.[33] For all of these reasons, the trial court's determination that the number of hours claimed by Liberty was reasonable was an abuse of discretion.

Moreover, Liberty's claim of privilege was insufficient to prevent Williams-Inner from viewing any portion of the billings. The attorney-client privilege is narrow in scope, "attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice."[34] "Confidential client communications, along with opinions, conclusions, and recommendations based on those communications, are protected by the attorney-client privilege because they are at the core of what is covered by the privilege."[35] Those parts of the billing records containing privileged information could be redacted.[36] However, the remainder should have been made available to Williams-Inner. "The trial court's failure to even entertain such a procedure seems highly unreasonable and therefore an abuse of discretion."[37]

The trial court also erred with respect to its award of paralegal fees. "An award of attorney fees may include an award for the time and labor of any legal assistant who contributed

---

[32] *Smith*, 481 Mich at 532 (citation omitted).

[33] *Augustine*, 292 Mich App at 436.

[34] *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 618-619; 576 NW2d 709 (1998).

[35] *McCartney v Attorney General*, 231 Mich App 722, 735; 587 NW2d 824 (1998) (quotation marks and citation omitted).

[36] See *Augustine*, 292 Mich App at 421-422 (to allow a meaningful opportunity to contest a claim for attorney fees, records supporting the claim of fees could be "sanitized" to remove privileged information).

[37] *Id*. at 422.

noncclerical, legal support under the supervision of an attorney, provided the legal assistant meets the criteria set forth in Article 1, § 6 of the Bylaws of the State Bar of Michigan."[38]   At the first hearing regarding attorney fees, Williams-Inner questioned whether Kairys met these requirements.  Lazette stated that Kairys held a degree in paralegal studies and was a certified paralegal.[39]  However, Liberty offered no evidence to support this assertion.  Because there was no evidence to support Lazette's assertion, any factual finding regarding Kairys's qualifications was clearly erroneous.[40]   Liberty also claimed hours for another paralegal that worked on the case, Thomas Pattee, but provided no proof of his qualifications.  As the claimant, Liberty had the burden of establishing entitlement to the fees it claimed.[41]   Without evidence that these paralegals met the qualifications stated in Article 1, Section 6 of the Bylaws of the State Bar of Michigan, the trial court could not include their hours in its award of attorney fees to Liberty.[42]

Williams-Inner raises several additional arguments that are without merit.  Williams-Inner did not raise any of these arguments below, rendering the arguments unpreserved.[43]  Accordingly, our review is limited to review for plain error affecting substantial rights.[44]  To be entitled to relief, Williams-Inner must demonstrate that an error occurred, that the error was plain, and that the error affected substantial rights, meaning that the error was outcome-determinative.[45]

Williams-Inner first argues that the trial court's award must be reversed because it exceeded the amount Liberty actually paid its attorneys in this matter.  We agree that Liberty's recovery for attorney fees may not exceed the amount it actually paid.[46]  However, the record contains no evidence of what Liberty actually paid in attorney fees.  Thus, we cannot determine whether such an error occurred in this instance.

---

[38] MCR 2.626.

[39] Williams-Inner raised the issue again at the second hearing, noting that no proof of Kairys's qualifications had ever been presented.  Magdich offered no proof, stating only that Kairys was "the best paralegal" she had "ever seen."

[40] *Augustine*, 292 Mich App at 424.

[41] *Smith*, 481 Mich at 528-529.

[42] MCR 2.626.

[43] *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005).

[44] *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000).

[45] *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[46] See *McAuley v Gen Motors Corp*, 457 Mich 513, 519-520; 578 NW2d 282 (1998) (generally, an award of attorney fees is compensatory in nature; "Because the purpose of compensatory damages is to make the injured party whole for the losses actually suffered, the amount of recovery for such damages is inherently limited by the amount of the loss . . . .").

Williams-Inner next argues that paralegal fees are not recoverable at all in this matter because the recovery of paralegal fees is not specifically authorized by statute. Once the trial court determined that Williams-Inner's claim was fraudulent or excessive, it could award Liberty "a reasonable sum against [Williams-Inner] as an attorney's fee . . . ."[47] Our Legislature did not define the term "attorney's fee." However, the Michigan Court Rules explicitly allow the inclusion of an award for the time and labor of legal assistants in an award of attorney fees.[48] Where their language does not conflict, statutes and court rules relating to the same subject matter should be read harmoniously.[49] The statute and court rule relate to the same subject matter, attorney fees, and are not in conflict. Reading the statute and court rule in harmony leads to the inexorable conclusion that paralegal fees are recoverable as attorney fees in this matter, provided that the requirements of MCR 2.626 are satisfied.

Williams-Inner asserts that Liberty has waived its claim for attorney fees entirely by failing to support it with detailed billing statements. Waiver is the intentional relinquishment of a known right.[50] It can hardly be said that Liberty waived its claim for attorney fees when it filed a motion and multiple briefs requesting attorney fees, the trial court held two hearings on the issue, and ultimately awarded the fees.[51]

Finally, Williams-Inner raises a novel argument. She asserts that in order to recover attorney fees, Liberty was required to file a counter-complaint, and a jury was required to decide the issue. Generally, "every final judgment may grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded that relief in his or her pleadings."[52] Because the trial court determined Williams-Inner's claim was at least partially fraudulent or excessive, the trial court could award Liberty its reasonable attorney fees.[53] Liberty was not required to file a separate pleading to obtain this relief.[54] Nor was a jury required to determine the issue. Quite the contrary, it was for the trial court to determine whether an award

---

[47] MCL 500.3148(2).

[48] MCR 2.626.

[49] See *Lapeer Co Clerk v Lapeer Circuit Court*, 469 Mich 146, 165; 665 NW2d 452 (2003).

[50] *Sweebe v Sweebe*, 474 Mich 151, 156-157; 712 NW2d 708 (2006).

[51] See *Greater Bible Way Temple of Jackson v City of Jackson*, 268 Mich App 673, 688; 708 NW2d 756 (2005), rev'd on other grounds 478 Mich 373 (2007) (rejecting an argument that the plaintiff waived any claim for attorney fees by failing to state such a request in its complaint or incorporating it into the final order; the issue was "briefed by the parties, a hearing on the issue took place, and the trial court's written opinion awarding the fees show[ed] that it thoroughly considered the matter.").

[52] MCR 2.601(A).

[53] MCL 500.3148(2).

[54] MCR 2.601(A). See also *Greater Bible Way*, 268 Mich App at 688.

of attorney fees was warranted and to determine the amount of that award.[55] Williams-Inner's argument lacks merit.

We vacate the trial court's award of attorney fees and remand for redetermination of the award. On remand, Liberty "must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness."[56] If the billing records contain information protected by the attorney-client privilege, this information may be redacted.[57] However, Liberty bears the burden of establishing its claim, and "[i]f a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence."[58] The trial court must first "determin[e] the fee customarily charged in the locality for similar legal services," using "reliable surveys or other credible evidence of the legal market."[59] The trial court must "make specific findings, consistent with *Smith*, for each attorney whose fees plaintiff sought to recover."[60] Regarding paralegal fees, the trial court must determine whether the paralegals meet the requirements of MCR 2.626, and if they do, must similarly determine the customary fee in the locality for their services.[61] The trial court must then determine the number of hours reasonably expended by each attorney and paralegal, including whether it was reasonably necessary for multiple attorneys to attend to the same matter.[62] After it has done so, the trial court must multiply the hourly fee for each attorney and paralegal by the number of reasonable hours billed by that individual to establish a baseline figure.[63] Once this baseline figure has been established, the trial court may then "consider the other factors and determine whether they support an increase or decrease in the base number."[64] Affirmed in all other respects. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter

---

[55] See *Smith*, 481 Mich at 530-533 (outlining the procedure for a trial court to follow to determine the amount of an attorney fee award).

[56] *Id*. at 532.

[57] See *Augustine*, 292 Mich App at 421-422.

[58] *Smith*, 481 Mich at 532.

[59] *Id*. at 530-531.

[60] *Augustine*, 292 Mich App at 439.

[61] *Smith*, 481 Mich at 530-531.

[62] *Id*. at 532, 534.

[63] *Id*. at 533.

[64] *Id*.