## The People on the relation of John L. Sutherland and others v. The Governor.

*Ministerial duties: Governor: Discretion: Presumptions.* Where a duty is devolved upon the chief executive of the state rather than upon an inferior officer, it will be presumed to have been done because his superior judgment, discretion and sense of responsibility were confided in for a more accurate, faithful and discreet performance than could be relied upon if the duty were put upon an officer chosen for inferior duties; and such a duty can seldom be considered as merely ministerial.

*Portage Lake and Lake Superior ship canal, etc: Governor's certificate: Ministerial duty; Discretion.* The duty imposed upon the governor of Michigan by the acts of congress making a land grant for the construction of the Portage Lake and Lake Superior ship canal and harbor, and by the state legislation on the subject, to issue his certificate of the fact, when he shall be satisfied that the work has been done in conformity with the law, is not one of a purely ministerial character where he is left to no discretion.

*Republican government: The legislative, the judicial, and the executive departments.* The relations, each to the other, of the executive, the legislative, and the judicial departments of our government, and the exemption of each from the control of the others, considered.

*Judicial process: Aggregate body: Individual: Ministerial duty: Discretion.* In cases subject to the process of the courts, an aggregate body may be compelled to act as well as an individual; and the reference of a duty or authority

to such a body raises no stronger implication that it is entrusted to its judgment or discretion than if it were referred to one person only.

*Governor: Immunity from judicial coercion: Mandamus: Heads of departments: Ministerial duties.* As regards the question of immunity from coercion by the courts, the governor of a state occupies a position analogous rather to the president of the Union than to the heads of the executive departments of the federal government; and a decision that the latter may be compelled by mandamus to perform a mere ministerial duty is not in point where the writ is sought against the governor.

*Governor: Executive department: Presumptions.* As to all authority specially confided to the governor, whether by the constitution or by statute, it will be presumed that reasons of a conclusive nature required it to be so confided as an authority properly and peculiarly, if not exclusively, pertaining to the executive department, and therefore not subject to coercion by judicial process.

*Executive duties: Mandamus: Jurisdiction.* The jurisdiction to issue a mandamus to the governor is in no wise affected by the fact that he voluntarily appears, and though questioning the jurisdiction, professes a willingness to abide the decision of the court.

*Executive duties: Remedy: Presumptions.* A denial of jurisdiction to enforce by judicial remedy rights that depend upon the performance of executive duties, is not in legal effect a denial of all remedy; a party applying for action which, under the constitution and laws, depends on the executive discretion, or is to be determined by the executive judgment, if he fails to obtain it, has sought the proper remedy and must submit to the decision; and the presumption is just as conclusive in favor of executive as of judicial action.

*Mandamus: Governor: Jurisdiction.* The court decline, for lack of jurisdiction, to entertain an application for mandamus to direct the governor to issue his certificate as required by the legislation relating to said ship canal and harbor.

*Heard April 21.     Decided May 12.*

Application for *mandamus.*

*Alfred Russell,* for relators.

*Isaac Marston, Attorney General,* for respondent.

COOLEY, J.

This is an application for an order requiring the governor to show cause why he does not issue his certificate showing that the Portage Lake and Lake Superior ship canal and harbor have been constructed in conformity with the acts of Congress making a land grant for the same, and the acts of the legislature of this state conferring the grant upon a corporation, which the relators now claim to represent.

When the application was first presented to us we de-

clined to make the usual *ex parte* order until the question of our jurisdiction in the premises should have been argued, and this having now been done on the voluntary appearance of counsel for the relators, and of the attorney general on behalf of the governor, the question of jurisdiction is submitted for our decision.

The duty we are asked to compel the governor to perform is one imposed upon him by statute, and it consists in the issue of a certain certificate when he shall be satisfied that certain work has been done in conformity with the law.     The purpose of the certificate is to furnish to the beneficiaries under the land grant the evidence of their right to the land, to which the certificate, if granted, is understood to entitle them; so that the question involved in the controversy is, so far as the relators are concerned, one of private right and private property.     The governor, as we understand it, concedes that the canal and harbor are constructed in proper manner, but he insists that the spirit and intent of the federal and state statutes have not been complied with, inasmuch as the canal has been constructed upon private property, so that the public are not assured the benefits anticipated and meant to be secured in making the grant; and for this reason he refuses his certificate.     The relators thereupon insist that this presents for our consideration the simple question whether the governor construes correctly the statutes involved, and if not, they claim to be entitled to the proper remedy from the courts.     In other words, they insist that the question involved has become, by the concession of the governor that the work has been done, purely a judicial question, involving nothing but a proper construction of the law.

It is not claimed on the part of the relators that this court or any other has jurisdiction to require and compel the performance by the governor of his political duties, or the duties devolved upon him as a component part of the legislature.     It is conceded that these, under the constitution and laws, are to be exercised according to his own

judgment, and on his own sense of official responsibility, and that from his decision to act or decline to act there can be no appeal to the courts. Nor is it pretended that where any executive act whatsoever is manifestly submitted to the governor's judgment or discretion, such judgment or discretion can be coerced by judicial writ. What is claimed is, that where the act is purely ministerial, and the right of the citizen to have it performed is absolute, the governor, no more than any other officer, is above the laws, and the obligation of the courts, on a proper application, to require him to obey the laws, is the same that exists in any other case where an official ministerial duty is disregarded.

It may be doubted if this concession would not require us to dismiss the present application, if not to deny our jurisdiction in all cases where the governor is respondent and his executive action or duties are involved. There is no very clear and palpable line of distinction between those duties of the governor which are political, and those which are to be considered ministerial merely; and if we should undertake to draw one, and to declare that in all cases falling on one side the line the governor was subject to judicial process, and in all falling on the other he was independent of it, we should open the doors to an endless train of litigation, and the cases would be numerous in which neither the governor nor the parties would be able to determine whether his conclusion was, under the law, to be final, and the courts would be appealed to by every dissatisfied party to subject a co-ordinate department of the government to their jurisdiction. However desirable a power in the judiciary to interfere in such cases might seem from the standpoint of interested parties, it is manifest that harmony of action between the executive and judicial departments would be directly threatened, and that the exercise of such power could only be justified on most imperative reasons. Moreover, it is not customary in our republican government to confer upon the governor duties merely ministerial, and in the performance of which he is to be

left to no discretion whatever; and the presumption in all cases must be, where a duty is devolved upon the chief executive of the state rather than upon an inferior officer, that it is so because his superior judgment, discretion, and sense of responsibility were confided in for a more accurate, faithful, and discreet performance than could be relied upon if the duty were devolved upon an officer chosen for inferior duties. And if we concede that cases may be pointed out in which it is manifest that the governor is left to no discretion, the present is certainly not among them, for here, by the law, he is required to judge, on a personal inspection of the work, and must give his certificate on his own judgment, and not on that of any other person, officer or department.

We are not disposed, however, in the present case, to attempt on any grounds to distinguish it from other cases of executive duty with a view to lay down a narrow rule which, while disposing of this motion, may leave the grave question it presents to be presented again and again in other cases which the ingenuity of counsel may be able to distinguish in some minor particulars from the one before us. If a broad general principle underlies all these cases, and requires the same decision in all, it would scarcely be respectful to the governor, or consistent with our own sense of duty, that we should seek to avoid its application and strive to decide each in succession upon some narrow and perhaps technical point peculiar to the special case, if such might be discovered.

And that there is such a broad general principle seems to us very plain. Our government is one whose powers have been carefully apportioned between three distinct departments, which emanate alike from the people, have their powers alike limited and defined by the constitution, are of equal dignity, and within their respective spheres of action equally independent. One makes the laws, another applies the laws in contested cases, while the third must see that the laws are executed. This division is accepted as a

necessity in all free governments, and the very apportion-
ment of power to one department is understood to be a
prohibition of its exercise by either of the others.     The
executive is forbidden to exercise judicial power by the
same implication which forbids the courts to take upon
themselves his duties.

It is true that neither of the departments can operate
in all respects independently of the others, and that what
are called the checks and balances of government consti-
tute each a restraint upon the rest.     The legislature pre-
scribes rules of action for the courts, and in many particu-
lars may increase or diminish their jurisdiction; it also, in
many cases, may prescribe rules for executive action, and
impose duties upon, or take powers from the governor;
while in turn the governor may veto legislative acts, and
the courts may declare them void where they conflict with
the constitution, notwithstanding, after having been passed
by the legislature, they have received the governor's approval.
But in each of these cases the action of the department
which controls, modifies, or in any manner influences that
of another, is had strictly within its own sphere, and for
that reason gives no occasion for conflict, controversy or
jealousy. The legislature in prescribing rules for the courts,
is acting within its proper province in making laws, while
the courts, in declining to enforce an unconstitutional law,
are in like manner acting within their proper province,
because they are only applying that which is law to the
controversies in which they are called upon to give judg-
ment.     It is mainly by means of these checks and balances
that the officers of the several departments are kept within
their jurisdiction, and if they are disregarded in any case,
and power is usurped or abused, the remedy is by impeach-
ment, and not by another department of the government
attempting to correct the wrong by asserting a superior
authority over that which by the constitution is its equal.

It has long been a maxim in this country that the leg-

islature cannot dictate to the courts what their judgments shall be, or set aside or alter such judgments after they have been rendered.    If it could, constitutional liberty would cease to exist; and if the legislature could in like manner override executive action also, the government would become only a despotism under popular forms.    On the other hand it would be readily conceded that no court can compel the legislature to make or to refrain from making laws, or to meet or adjourn at its command, or to take any action whatsoever, though the duty to take it be made ever so clear by the constitution or the laws..  In these cases the exemption of the one department from the control of the other is not only implied in the framework of government, but is indispensably necessary if any useful apportionment of power is to exist.    It remains then to be seen on what grounds an intervention in the case of executive duties can be justified, when the other departments, acting within their respective spheres, are admitted to be so entirely independent·

It certainly cannot be on the ground that the executive is only a single person, who need await the advice or consent of no one before proceeding to the discharge of his duty, and whose default will consequently be more palpable when he acts wrongfully or refuses to act at all, than the default of any member of an aggregate body, like a legislature or a court, when action which requires consultation, deliberation and the consent of a majority fails to be taken.

In cases subject to the process of the courts, an aggregate body may be compelled to act as well as an individual, though the process may not be so speedy, or the ascertainment of individual default so easy as when the duty is required of a single officer.    Nor can it be because the reference of a duty or authority to an aggregate body raises an implication that it is entrusted to its judgment or discretion any more than if it were referred for performance or exercise to one person only.    The nature of the act to be done must generally determine whether or not it is dis-

cretionary, and not the number of persons who are to do or decide upon doing it.

One reason very strongly pressed why the governor is subject to process in cases like the present is, that the act required is not to be done in performance of an executive duty imposed by the constitution, but is in its nature a ministerial act, provided for by statute, and which might, with equal propriety, have been required of an inferior officer, who, beyond question, could have been compelled by *mandamus* to take the necessary and proper action in the premises. And the question is put with some emphasis, whether, when individual interests depend upon the performance of ministerial action, to which the party is entitled of right, the question whether there shall be a remedy or not can depend upon the circumstance that in the particular case the ministerial action is required of a superior officer when there is no reason in its nature why it might not have been required of an inferior.

A view similar to this has been taken in some cases, and the courts have undertaken to decide what are and what are not properly executive duties, and to assert a right to control the governor's action in some cases, while admitting their want of jurisdiction to do so in others.— *The State v. The Governor, 5 Ohio St., 528 ; Bonner v. Pitts, 7 Geo., 473 ; Cotten v. The Governor, 7 Jones, N. C., 545 ; Chamberlain v. The Governor, 4 Minn., 309; Pacific R. R. v. The Governor, 23 Mo., 353 ; Magruder v. The Governor, 25 Md., 173.* These cases for the most part are rested upon the *dictum* of chief justice Marshall in *Marbury v. Madison, 1 Cranch, 137,* that one of the heads of department in the federal government might be compelled by *mandamus* to perform a mere ministerial duty; a *dictum* which cannot be understood as expressive of the opinion of that eminent judge that the president was subject to the like process, but which is wholly inapplicable to a case like the present, unless it goes to that extent. For it cannot justly be claimed, when federal and state governments have

been formed, so far as distribution of power is concerned, on the same general plan, that the executive of the union can claim immunity from judicial process any more than the governor of one of the states. In many cases it is unquestionable that the head of an executive department may be required by judicial process to perform a legal duty, while in other cases, in our judgment, the courts would be entirely without jurisdiction; and, as regards such an officer, we should concede that the nature of the case and of the duty to be performed must determine the right of the court to interfere in each particular instance. When the head of a department acts as the mere assistant or agent of the executive in the performance of a political or discretionary act, he is no more subject to the control of the courts than the chief executive himself; but where a ministerial act is required to be done by him, independently of the executive, though in a certain sense he is an executive officer, it would be as idle to dispute his responsibility to legal process, as it would be to make the same claim to exemption on behalf of an officer entrusted with similar duties of a lower grade. This is emphatically the case under the constitution of this state, which provides for the election of state and inferior officers alike by the people, and makes the chief officers of state below the governor as independent of his control in the performance of their duties as are the officers of the counties or of the townships.

But when duties are imposed upon the governor, whatever be their grade, importance or nature, we doubt the right of the courts to say that this or that duty might properly have been imposed upon a secretary of state, or a sheriff of a county or other inferior officer, and that inasmuch as in case it had been so imposed, there would have been a judicial remedy for neglect to perform it, therefore there must be the like remedy when the governor himself is guilty of a similar neglect. The apportionment of power, authority and duty to the governor, is either made by the people in the constitution, or by the legislature in making

laws under it; and the courts, when the apportionment has been made, would be presumptuous if they should assume to declare that a particular duty assigned to the governor is not essentially executive, but is of such inferior grade and importance as properly to pertain to some inferior office, and consequently, for the purposes of their jurisdiction, the courts may treat it precisely as if an inferior officer had been required to perform it. To do this would be not only to question the wisdom of the constitution or the law, but also to assert a right to make the governor the passive instrument of the judiciary in executing its mandates within the sphere of his own duties. Were the courts to go so far, they would break away from those checks and balances of government which were meant to be checks of co-operation, and not of antagonism or mastery, and would concentrate in their own hands something at least of the power which the people, either directly or by the action of their representatives, decided to entrust to the other departments of the government.

There is as to all the authority specially confided to the governor, whether by the constitution or the laws, no safe or logical doctrine but this: that reasons of a conclusive nature must be presumed to have been found, requiring the particular authority to be confided to the chief executive as one properly and peculiarly, if not exclusively pertaining to the department which he represents.

It is not attempted to be disguised on the part of the relators that any other course than that which leaves the head of the executive department to act independently in the discharge of his duties might possibly lead to unseemly conflicts, if not to something worse, should the courts undertake to enforce their mandates and the executive refuse to obey; but it is insisted that no such considerations are admissible in the present case, in which the governor, though questioning our jurisdiction, professes a willingness to be governed by our decision upon it. The decision of this question, however, is to be a precedent in the state,

and no voluntary appearance and no concession which may be made is to be allowed force to induce us to assert a jurisdiction which, though it might be useful in this case, would threaten conflict and danger in future controversies. Orders in these cases can only be enforced by process for the punishment of contempts of court, and it is conceded that the governor might submit or not, at his option; so that our decision in effect could be only advisory. And while we should concede, if jurisdiction was plainly vested in us, the inability to enforce our judgment would be no sufficient reason for failing to pronounce it, especially against an officer who would be presumed ready and anxious in all cases to render obedience to the law, yet in a case where jurisdiction is involved in doubt it is not consistent with the dignity of the court to pronounce judgments which may be disregarded with impunity, nor with that of the executive to place him in position where, in a matter within his own province, he must act contrary to his judgment, or stand convicted of a disregard of the laws.

But it is said that this conclusion will leave parties who have rights, in many cases, without remedy. Practically, there are a great many such cases, but theoretically, there are none at all. All wrongs, certainly, are not redressed by the judicial department. A party may be deprived of a right by a wrong verdict, or an erroneous ruling of a judge, and though the error may be manifest to all others than those who are to decide upon his rights, he will be without redress. A person lawfully chosen to the legislature may have his seat given by the house to another, and be thus wronged without remedy. A just claim against the state may be rejected by the board of auditors, and neither the governor nor the courts can give relief. A convicted person may conclusively demonstrate his innocence to the governor, and still be denied a pardon. In which one of these cases could the denial of redress by the proper tribunal constitute any ground for interference by any other authority? The law must leave the final decision upon

every claim and every controversy somewhere, and when that decision has been made, it must be accepted as correct. The presumption is just as conclusive in favor of executive action as in favor of judicial. The party applying for action, which, under the constitution and laws, depends on the executive discretion, or is to be determined by the executive judgment, if he fails to obtain it, has sought the proper remedy and must submit to the decision.

The cases of *Hawkins v. The Governor, 1 Ark., 570; State v. The Governor, 25 N. J., 331; People v. Bissell, 19 Ill., 229; Dennett, Petitioner, 32 Me., 510;* and *Mauran v. Smith, 8 R. I., 192,* which reach the same conclusion, are so full and satisfactory in their reasoning, that we might have deemed it proper to dismiss the case with a simple reference to them, if there had not been opposing decisions, which are supposed to detract from the weight of their authority. Those opposing decisions, as we think, have not been sufficiently observant of the distinction between the governor, as being himself a distinct and independent department of the government, and those administrative officers, who, though clothed with important powers, must be subject in the performance of their duties to the regulation, direction and control of the legislature, executive and judiciary, according as the intervention of one or the other in a particular case shall become proper or necessary.

For the reasons stated we must decline to make any order to show cause.

CAMPBELL and CHRISTIANCY, JJ., concurred.

GRAVES, CH. J., did not sit in this case.