TAXPAYERS OF MICHIGAN AGAINST CASINOS
v STATE OF MICHIGAN (ON REMAND)

Docket No. 225017. Submitted August 26, 2004, at Lansing. Decided
September 27, 2005, at 9:00 a.m. Leave to appeal sought.

Taxpayers of Michigan Against Casinos and Laura Baird, in her
official capacity as a state representative, brought an action in the
Ingham Circuit Court against the state of Michigan, challenging
the constitutionality of compacts between the state and various
Indian tribes concerning casinos on tribal lands in Michigan. The
Governor had negotiated the compacts on behalf of the state under
the Indian Gaming Regulatory Act, 25 USC 2701 *et seq.*, and the
Michigan House of Representatives and Senate had approved the
compacts by concurrent resolution. Gaming Entertainment, LLC,
intervened as a defendant. The court, Peter D. Houk, J., ruled that
legislative approval of the compacts by resolution rather than by
bill violated Const 1963, art 4, § 22 (which provides that all
legislation shall be by bill) and that the provision in the compacts
allowing their amendment by the Governor without legislative
approval violated the Separation of Powers Clause, Const 1963, art
3, § 2. The court also concluded that the approval did not violate
Const 1963, art 4, § 29 (which provides that the Legislature shall
pass no local or special act in any case in which a general act can
be made applicable). The defendants appealed, and the plaintiffs
cross-appealed. The Court of Appeals, HOOD, P.J., and HOLBROOK
and OWENS, JJ., affirmed in part and reversed in part, holding that
approval of the compacts by resolution did not violate Const 1963,
art 4, § 22 or § 29, and that the issue of separation of powers was
not ripe for review because the Governor had not attempted to
amend the compacts. 254 Mich App 23 (2002). The Supreme Court
affirmed the judgment of the Court of Appeals, but concluded that
the separation of powers issue was now ripe for review because the
Governor had amended one of the compacts. The Supreme Court
remanded the case to the Court of Appeals for full consideration of
that issue. 471 Mich 306 (2004). On remand, the Little Traverse
Bay Bands of Odawa Indians, a party to the compact amended,
intervened as a defendant and appellant.

On remand, the Court of Appeals *held*:

The provision in the compacts that provides for their amendment by the Governor without legislative approval violates the Separation of Powers Clause, as did the Governor's use of that provision in the compact between the state and the Little Traverse Bay Bands. The Constitution does not grant the executive branch authority to assume any legislative role. The Legislature did not approve subsequent amendments to the compacts in advance when it approved the compacts by concurrent resolution, and never delegated by means of a statute the authority to amend the compacts. Amendments to the compacts must be presented to the Legislature for approval.

Trial court decision relative to the separation of powers issue reinstated.

BORRELLO, J., dissenting, would conclude that the provision granting the Governor authority to amend the compacts without legislative approval does not violate the Separation of Powers Clause and would reverse the trial court's ruling on that issue. The Legislature's approval of the compacts by concurrent resolution included approval of the amendment provision and the amendment process it contained, effectively granting the Governor approval in advance of amendments or permitting the Governor to amend the compacts without legislative approval. The Legislature could validly confer this power on the Governor through resolution. The Legislature approved the compacts with full knowledge of the existence of the amendment provision. As long as any amendment of a compact was constitutional, it was proper. The Court should not interfere with the legitimate exercise of legislative discretion, and must be mindful of the limits on the judiciary's role in matters involving separation of powers.

INDIANS — TRIBAL-STATE CASINO COMPACTS — AMENDMENTS WITHOUT LEGISLATIVE APPROVAL — CONSTITUTIONAL LAW — SEPARATION OF POWERS.

A provision in a compact between the state and an Indian tribe pertaining to tribal casinos that allows amendment of the compact by the Governor without legislative approval violates the Separation of Powers Clause of the Michigan Constitution (Const 1963, art 3, § 2).

*Warner Norcross & Judd LLP* (by *Robert J. Jonker, William C. Fulkerson, Daniel K. DeWitt,* and *John J. Bursch*) for Taxpayers of Michigan Against Casinos.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Barris, Sott, Denn & Driker, P.L.L.C.* (by *Eugene Driker* and *Thomas F. Cavalier*), Special Assistant Attorneys General, for the state of Michigan.

*Kanji & Katzen, P.L.L.C.* (by *Riyaz A. Kanji* and *Jennifer B. Salvatore*), *Drummond, Woodsum & MacMahon* (by *Kaighn Smith*), and *James Bransky*, for the Little Traverse Bay Bands of Odawa Indians.

*Dykema Gossett PLLC* (by *Richard D. McLellan, R. Lance Boldrey*, and *Kristine N. Tuma*) for Gaming Entertainment, LLC.

ON REMAND

Before: OWENS, P.J., and SCHUETTE and BORRELLO, JJ.

SCHUETTE, J. The issue presented to this Court on remand from our Supreme Court's decision in *Taxpayers of Michigan Against Casinos v Michigan*, 471 Mich 306, 333; 685 NW2d 221 (2004) (*Taxpayers*), is whether the amendatory provision in the tribal-state gambling compacts purporting to empower the Governor to amend the compacts without legislative approval violates the separation of powers doctrine found in the Separation of Powers Clause in Const 1963, art 3, § 2. As will be thoroughly discussed, we hold that the Separation of Powers Clause in Const 1963, art 3, § 2 was violated in this instance. We affirm the decision of the circuit court on this issue.

I. PROCEDURAL HISTORY

A. LEGISLATIVE ACTION

The legal issues confronting this Court and the Supreme Court stem from the expansion of casino gambling in the state of Michigan.

In January 1997, Governor John Engler, on behalf of the state of Michigan, signed gambling compacts with four Indian tribes[1] permitting class III gambling activities pursuant to the Indian Gaming Regulatory Act (IGRA), 25 USC 2701 *et seq.* These compacts were modified and reexecuted in December 1998. The Michigan Legislature approved these gambling compacts by passage of House Concurrent Resolution (HCR) 115. The House of Representatives approved HCR 115 by a resolution vote of 48 to 47, while the Michigan Senate passed HCR 115 by a resolution vote of 21 to 17. The passage of these compacts by resolution, instead of by bill, ironically had significance in 1998 and, as will be discussed, retains significance now. As acknowledged by our Supreme Court in *Taxpayers*, 471 Mich at 316 n 4, a bill must be passed by a majority of the representatives elected to and serving in each house of the Legislature.[2] However, passage of a resolution merely requires a simple majority of the members present and voting as long as a quorum is present.[3]

### B. CIRCUIT COURT ACTION

The validity of the approval of these gambling compacts, by resolution rather than statute, spawned several lawsuits: two in federal court and this action originally brought in the Ingham Circuit Court. The

[1] These tribes are the Little Traverse Bay Bands of Odawa Indians, the Pokagon Band of Ottawa Indians, the Little River Band of Ottawa Indians, and the Nottawaseppi Huron Potawatomi.

[2] The Michigan Legislature is composed of 110 members of the House of Representatives; 56 votes are required at a minimum for passage of a statute. The Michigan Senate is composed of 38 members; 20 votes are required at a minimum for passage of a statute.

[3] Under the rules of the Michigan House of Representatives, a majority of the members of the House of Representatives must be present to constitute a quorum.

Sault Ste. Marie Tribe of Lake Superior sued in federal court to enjoin the operation of the new casinos, but the United States Court of Appeals for the Sixth Circuit dismissed that suit on the grounds of lack of standing. *Sault Ste Marie Tribe of Chippewa Indians v United States*, 288 F3d 910 (CA 6, 2002). Two state legislators also challenged the approval by the Secretary of Interior of Michigan's 1998 compacts, but that suit also was dismissed on the grounds of lack of standing by the Sixth Circuit. *Baird v Norton*, 266 F3d 408 (CA 6, 2001).

Plaintiffs sought a declaratory judgment that the method of approval of the gambling compacts violated various provisions of the Michigan Constitution. Plaintiffs argued that legislative approval of the compacts by resolution violated Const 1963, art 4, § 22, which requires adoption of legislation by bill rather than mere resolution. Additionally, plaintiffs complained that the compacts violated Const 1963, art 4, § 29, the Local Acts Clause. Finally, plaintiffs alleged that the provision within the gambling compacts that permitted the Governor to amend a compact without legislative approval violated Const 1963, art 3, § 2, the Separation of Powers Clause, which is the very matter before this Court.

The trial court ruled in favor of plaintiffs in two instances, determining that the gambling compacts should have been approved by bill instead of by resolution and that the amendatory provision in the compacts ran afoul of the doctrine of separation of powers. The trial court determined that the approval of the gambling compacts did not violate the Local Acts Clause of Const 1963, art 4, § 29.

C. COURT OF APPEALS DECISION

A panel of this Court in *Taxpayers of Michigan Against Casinos v Michigan*, 254 Mich App 23, 43-49;

657 NW2d 503 (2002), reversed the trial court's deter-
mination that passage of the compacts by resolution did
not conform to the Michigan Constitution, affirmed the
trial court's reasoning with respect to the Local Acts
Clause, and declared that the issue of the amendatory
provision within each of the four compacts, which at
that time had not been exercised by the Governor, was
not ripe for judicial review.

### D. SUPREME COURT DECISION

Upon review, five justices of our Supreme Court held
that legislative approval of the gambling compacts by
mere resolution did not violate the Michigan Constitu-
tion, likening the tribal-state gambling compacts to a
contract as distinguished from more traditional legisla-
tive or statutory actions of the Michigan Legislature.
*Taxpayers*, 471 Mich at 327-328, 352. All seven justices
of our Supreme Court also determined that there was
no violation of the Local Acts Clause, Const 1963, art 4,
§ 29.[4]

In July 2003, and before the Supreme Court's ruling,
Governor Jennifer Granholm exercised the amendatory
provision contained within an individual compact nego-
tiated between the state of Michigan and the Little
Traverse Bay Bands of Odawa Indians. Chief Justice
CORRIGAN, in her lead opinion, acknowledged this fact

---

[4] Justices TAYLOR and YOUNG concurred in Chief Justice CORRIGAN's
analysis concerning Const 1963, art 4, § 22 (constitutionality of approval
by resolution, not by bill) and in her determination that Const 1963, art
4, § 29, the Local Acts Clause, was not violated by passage of HCR 115.
Justice CAVANAGH, while concurring only in part IV of Chief Justice
CORRIGAN's lead opinion, joined Justice KELLY's concurring opinion con-
cluding that no violation of Const 1963, art 4, § 22 or 29 occurred. Justice
MARKMAN concurred with part VI of Chief Justice CORRIGAN's lead opinion
concerning Const 1963, art 4, § 29, and Justice WEAVER also concurred
with the holding of no violation of Const 1963, art 4 § 29.

and stated that "the amendment provision in the compact may now be ripe for review . . . ." *Taxpayers,* 471 Mich at 313. Again, five justices of our Supreme Court concluded that the separation of powers issue alleged by plaintiffs was now ripe for review, but in the absence of an appellate court ruling on this precise issue, a remand to this Court was appropriate.

Justices TAYLOR and YOUNG joined Chief Justice COR-RIGAN in her lead opinion, in which she stated that "we remand this issue to the Court of Appeals to consider whether the provision in the compacts purporting to empower the Governor to amend the compacts without legislative approval violates the separation of powers doctrine found in Const 1963, art 3, § 2." *Id.* at 333.

Justice MARKMAN, in his dissent, determined that the amendment by the Governor made the issue "ripe." *Id.* at 362. Justice MARKMAN further stated that "the amendatory provision contained in each compact violates the separation of powers doctrine and is, thus, void insofar as it may be regarded as granting sole amendatory power over legislation to the Governor." *Id.* at 407. Justice WEAVER did not address the ripeness issue or the separation of powers issue now before this Court, declining on the basis of her determination that the gambling compacts were violative of Const 1963, art 4, § 22. *Taxpayers,* 471 Mich at 354.

### E. PROCEDURES OF THE COURT OF APPEALS ON REMAND

In October 2004, Judges BORRELLO and SCHUETTE were randomly selected to replace retired Judges HOOD and HOLBROOK, who were panelists on this Court's earlier decision in this case. In November 2004, this Court issued an order in this case, which, among other things, allowed the parties to file briefs addressing

(1) whether the provision in the tribal-state gaming compact of the Little Traverse Bay Band [sic] of Odawa Indians, purporting to allow the governor to amend the compact without legislative approval, violates the separation of powers clause, Const 1963, art 3, § 2, (2) assuming that the amendment provision in the compact is constitutional, whether any aspect of the exercise of the power to amend violated the separation of powers clause, Const 1963, art 3, § 2, and (3) what effect will there be on the amendment as a whole if an aspect of the amendment violates the separation of powers clause.[5]

A second order, dismissing a motion to disqualify Judge SCHUETTE, was entered on November 24, 2004. No appeal was filed challenging Judge SCHUETTE's order dismissing the motion to disqualify.

## II. THE 1998 COMPACTS

The gambling compacts negotiated in 1998 between Governor Engler on behalf of the state of Michigan and the four Indian tribes contained identical provisions, except that the geographic scope of gambling activity permitted within the state of Michigan varied among the four tribes.

Of significance to the case at bar are the following sections contained in each of the four gambling compacts. Section 12(E) provides:

In the event that any section or provision of this Compact is disapproved by the Secretary of the Interior of the United States or is held invalid by any court of

---

[5] Judge SCHUETTE acknowledges that, for clarity's sake, the order should have included a fourth item that would have requested the parties to discuss what effect will there be on the *compact* as a whole if an aspect of the amendment violates the Separation of Powers Clause. However, given the thoroughness of the analyses submitted by all parties and amici curiae, and that the constitutional questions presented and determined have been fully and completely examined, the omission is not significant.

competent jurisdiction, it is the intent of the parties that
the remaining sections or provisions of this Compact, and
any amendments thereto, shall continue in full force and
effect. This severability provision does not apply to Sections 17 and 18 of this Compact.

Section 16 of the gambling compacts outlines the
methodology for amending a compact. This section
provides in part:

> This Compact may be amended by mutual agreement
> between the Tribe and the State as follows:
>
> (A) The Tribe or the State may propose amendments to
> the Compact by providing the other party with written
> notice of the proposed amendment as follows:
>
> (i) The Tribe shall propose amendments pursuant to the
> notice provisions of this Compact by submitting the proposed amendments to the Governor who shall act for the
> State.
>
> (ii) The State, acting through the Governor, shall propose amendments by submitting the proposed amendments to the Tribe pursuant to the notice provisions of this
> Compact.
>
> *  *  *
>
> (C) Any amendment agreed to between the parties shall
> be submitted to the Secretary of the Interior for approval
> pursuant to the provisions of the IGRA.
>
> (D) Upon the effective date of the amendment, a certified copy shall be filed by the Governor with the Michigan
> Secretary of State and a copy shall be transmitted to each
> house of the Michigan Legislature and the Michigan Attorney General.

Sections 17 and 18 of each gambling compact detail
the financial transactions between the state of Michigan and a tribe, describe how payments are made from
a tribe to the Michigan Strategic Fund, describe how

funds flow to local units of government, describe how such payments are calculated, and indicate that such payments will be made only if nontribal gambling is restricted to the three licenses in the city of Detroit pursuant to MCL 432.201 *et seq.*

### III. 2003 AMENDMENTS

On July 14, 2003, Governor Granholm, on behalf of the state of Michigan, exercised the amendatory provision in §16 of the 1998 gambling compact between the state of Michigan and the Little Traverse Bay Bands of Odawa Indians. Several changes were made to the original agreement. The preamble clause to these amendments indicated that any changes were in accordance with §16 of the 1998 gambling compact. Also noteworthy in the preamble was the specific inclusion of a statement that "[a]ll provisions of the Compact not explicitly added or amended herein shall remain in full force and effect." The 2003 amendments of greatest significance are summarized as follows:

(1) The amendment to § 2(8)(1) grants the Little Traverse Bay Bands of Odawa Indians the right to operate a second casino.

(2) For purposes of this second casino, the amendment to § 4(I) changes the age of legal gambling from 18 to 21.

(3) Added § 4(O) requires the tribe to send reports of customer winnings to the state; previously such reports were sent only to the federal government as a requirement of federal law.

(4) The amendments to § 12(A) and (B) make the compact binding on the state and the tribe for 25 years from the effective date of the amendments, instead of it

being binding for 20 years from the effective date of the compact, and make a corresponding change to a notice requirement.

(5) The original compact required the tribe to pay the state a percentage of the "net win" as long as there was no change in state law permitting the operation of electronic games of chance or commercial casino games and no other person (except another tribe or a person operating in the city of Detroit under MCL 432.201 *et seq.*) lawfully operated such games. The amendments to § 17(B) provide:

(a) that this includes the expansion of lottery games,

(b) that payments from the first casino (the Petoskey Site) will continue after the second casino has operated for 24 months despite changes in state law that expand permitted gaming as long as the change does not occur in ten specified northern Michigan counties, and

(c) that payments from the second casino will be made despite such a change in the law as long as the expansion does not operate in the designated counties.

(6) Instead of paying eight percent of the "net win" from all class III electronic games of chance at the Petoskey Site to the Michigan Strategic Fund or its successor as determined by state law, the tribe must pay this eight percent to "the State, as directed by the Governor or designee." For the second casino, the tribe must pay ten percent of all such earnings up to $50 million and 12 percent of all such earnings over $50 million to "the State, as directed by the Governor or designee" See amendment to § 17(C). However, the payments could cease or diminish if another tribe opens a casino in the designated counties without the compacting tribe's consent. See added § 17(E).

IV. STANDARD OF REVIEW

This Court reviews de novo constitutional issues. *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 582; 640 NW2d 321 (2001). The party asserting a constitutional challenge has the burden of proof. *McDonald v Grand Traverse Co Election Comm*, 255 Mich App 674, 680; 662 NW2d 804 (2003).

V. ANALYSIS

The closely related core issues presented to this Court on remand are (1) whether the provision in the gambling compact between the state of Michigan and the Little Traverse Bay Bands of Odawa Indians, which provides for amendment by the Governor without legislative approval, violates Const 1963, art 3, § 2 and (2) whether the exercise of the amendatory provision in the gambling compact between the state of Michigan and the Little Traverse Bay Bands of Odawa Indians, by the Governor without legislative approval, violated Const 1963, art 3, § 2.

We hold that the provision in the gambling compact between the state of Michigan and the Little Traverse Bay Bands of Odawa Indians that provides for amendment by the Governor without legislative approval violates Const 1963, art 3, § 2. Further, we hold that the exercise by the Governor without legislative approval of the amendatory provision in the gambling compact between the state of Michigan and the Little Traverse Bay Bands of Odawa Indians violated Const 1963, art 3, § 2.[6] The provision contained in the compact (and in the additional three compacts described in footnote 6 of this

_____

[6] As a corollary to our decision in this case, we also hold that the same provision in the three other gambling compacts between the state of

opinion) is void insofar as it grants amendatory power solely to the Governor without legislative approval.

Although the lines separating the three branches of state government may converge from time to time, they are distinct boundaries, not mirages. The Michigan Constitution outlines the landscape of powers that separate the executive, legislative, and judicial branches of government. "By separating the powers of government, the framers of the Michigan Constitution sought to disperse governmental power and thereby to limit its exercise." *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 613; 684 NW2d 800 (2004).

The Governor's responsibility is to exercise the executive power, Const 1963, art 5, § 1, including the power to suggest legislation, Const 1963, art 5, § 17. The responsibilities entrusted to the executive branch of government are set forth in Const 1963, art 5, § 8:

> Each principal department shall be under the supervision of the governor unless otherwise provided by this constitution. The governor shall take care that the laws be faithfully executed. He shall transact all necessary business with the officers of government and may require information in writing from all executive and administrative state officers, elective and appointive, upon any subject relating to the duties of their respective offices.
>
> The governor may initiate court proceedings in the name of the state to enforce compliance with any constitutional or legislative mandate, or to restrain violations of any constitutional or legislative power, duty or right by any officer, department or agency of the state or any of its political subdivisions. This authority shall not be construed to authorize court proceedings against the legislature.

Michigan and the Pokagon Band of Ottawa Indians, the Little River Band of Ottawa Indians, and the Nottawaseppi Huron Potawatomi violates Const 1963, art 3, § 2.

Of significance in this constitutional provision is the specific, stated responsibility of the Governor to faithfully execute laws. Conspicuously absent is any reference whatsoever granting the executive branch any authority to assume any legislative role. While the Constitution provides the Governor the right to suggest legislation, it neither confers nor implies any power on the part of the Governor to invade, supersede, or assume powers conferred on the Legislature.

The powers of the legislative branch of government are set forth in Const 1963, art 4, § 1: "The legislative power of the State of Michigan is vested in a senate and a house of representatives."

Const 1963, art 6, § 1 outlines the breadth of responsibility of the judicial branch of state government. It states:

> The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house.

These constitutional provisions establish the framework for our analysis. Further, Const 1963, art 3, § 2 provides the boundary lines of the branches of government and contains the admonition that one branch of government shall not assume the responsibilities of another unless the Constitution *expressly* so provides.

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution. [Const 1963, art 3, § 2.]

The embodiment of the boundaries of the branches of government, known as the separation of powers, was summarized by Justice COOLEY in *People ex rel Sutherland v Governor,* 29 Mich 320, 324-325 (1874):

> And that there is such a broad general principle seems to us very plain. Our government is one whose powers have been carefully apportioned between three distinct departments, which emanate alike from the people, have their powers alike limited and defined by the constitution, are of equal dignity, and within their respective spheres of action equally independent. . . . *This division is accepted as a necessity in all free governments, and the very apportionment of power to one department is understood to be a prohibition of its exercise by either of the others.* [Emphasis added.]

The Little Traverse Bay Bands of Odawa Indians and the dissent argue that in approving the compacts by resolution in 1998, the Legislature also approved any subsequent amendments, albeit in advance. We reject this argument. The tribe also notes that the Legislature has authorized other bodies in advance to make binding contracts, pointing specifically to the Social Welfare Act, which authorizes the director of the Family Independence Agency, now the Department of Human Services, to enter into agreements with federal, state or local units of government or private agencies to participate in any plan that the director deems desirable for the welfare of the people of the state. MCL 400.10(3).

However, unlike the authority for amendments to the compacts, the advance authority to contract under the Social Welfare Act is provided by statute. Directly applicable to this case is our Supreme Court's decision in *Roxborough v Michigan Unemployment Compensation Comm,* 309 Mich 505; 15 NW2d 724 (1944). In *Roxborough,* the issue presented was whether the Governor had the ability to appoint members of the Unemployment Compensation Commission Appeal Board and

to fix their salaries as provided by an act of the Legislature. Our Supreme Court held:

> In fixing plaintiff's salary, the governor could exercise only such authority as was delegated to him by legislative enactment. The rule is stated in 59 C.J. pp. 172, 173, § 286, as follows:
>
> "Public officers have and can exercise only such powers as are conferred on them by law, and a State is not bound by contracts made in its behalf by its officers or agents without previous authority conferred by statute or the Constitution." [*Id.* at 510.]

Further, the dissent's attempt to distinguish *Roxborough* is unpersuasive. The rule from *Roxborough* is essentially that "[g]enerally, only persons authorized by the state constitution or a statute can make a contract binding on a state . . . ." 72 Am Jur 2d, States, Territories, and Dependencies, § 71, p 457. Here the delegation of authority to amend a gambling compact was conferred by a resolution, a nonstatutory means. The nonstatutory nature of a resolution fails the *Roxborough* requirement that a valid delegation of legislative authority to the executive branch of government must be expressed in the Michigan Constitution or by means of a statute.

·Moreover, in *McCartney v Attorney General,* 231 Mich App 722, 726-728; 587 NW2d 824 (1998), citing *Tiger Stadium Fan Club, Inc v Governor,* 217 Mich App 439; 553 NW2d 7 (1996), this Court expressed careful recognition that although the Governor had the authority to negotiate and execute gambling compacts, the actions were subject to legislative approval. The Court concluded that the Governor did not act ultra vires in negotiating the compacts, but clearly stated that such gubernatorial authority was limited in nature:

> We emphasize that the Governor has executive power, Const 1963, art 5, § 1, and the power to suggest legislation,

Const 1963, art 5, § 17. We also emphasize that there is no constitutional impediment to the Governor's negotiating with an Indian tribe where the product of his negotiations has no effect *without legislative approval*. [*McCartney, supra* at 729 (emphasis added).]

The expansion of tribal and nontribal gambling in Michigan and throughout the United States engenders a wide range of opinions. Nevertheless, the rule of law in Michigan has been enunciated in *Taxpayers*, in which our Supreme Court (as discussed in part I[D] of this opinion) held that the Governor may contract with a tribe to establish the ground rules pertaining to casino gambling. These ground rules, set forth in the contract, must be presented to the Legislature for approval, at the very least by legislative resolution. Here, no party has identified any statutory or constitutional authorization for the Governor to enter into compacts or amendments to compacts that are not subject to legislative approval. Thus, while the Supreme Court in *Taxpayers* held that the Governor could negotiate the gambling compacts subject to legislative approval by resolution, we conclude that the Governor does not have unbridled authority to amend a compact.

Absent a statutory delegation of authority by the Legislature to the Governor to amend a gambling compact, and being mindful of the constitutional prohibition that forbids the executive branch from assuming duties of the legislative branch unless expressly provided for in the Michigan Constitution, any amendment to a gambling compact must be presented to the Legislature for approval, at the very least by legislative resolution.[7]

---

[7] We decline to decide the specific question whether, if in 1998 the Legislature had approved the four gambling compacts by bill, in the form of a statute and not by a mere resolution, the Legislature would have

The cases cited by Judge BORRELLO in his eloquent and well-reasoned dissent and referred to by the state and the tribe in their briefs are not applicable and are not dispositive of the issues before this Court. All the cases referenced by the parties have the embedded premise of a statutory or constitutional delegation of authority to the Governor. There was no valid delegation of authority to amend gambling compacts in this case. Here, there was no statute or constitutional provision that gave the Governor the authority to unilaterally amend the compacts. This factor makes the cases on which the parties and the dissent rely readily distinguishable. In *Sutherland,* the Governor was to issue a certificate when satisfied that a canal and harbor had been constructed in a proper manner, a task that was assigned to the Governor by statute. The plaintiff sought a writ of mandamus to compel the Governor to issue the certificate. The Governor had refused, believing that the spirit of the law was undermined by the placement of the canal and harbor on private property. In refusing to grant mandamus to compel the Governor to issue the certificate, the Court stated:

> The apportionment of power, authority and duty to the governor, is either made by the people in the constitution, or by the Legislature in making laws under it; and the courts, when the apportionment has been made, would be presumptuous if they should assume to declare that a particular duty assigned to the governor is not essentially executive, but is of such inferior grade and importance as properly to pertain to some inferior office, and consequently, for the purposes of their jurisdiction, the courts

properly delegated to the Governor the power to amend a compact without subsequent legislative approval. See also Justice MARKMAN's view in his dissenting opinion in *Taxpayers,* stating, "The legislature may not, either by resolution or by bill, delegate to the executive branch a broad and undefined power to amend legislation." *Taxpayers, supra* at 471 Mich 407.

may treat it precisely as if an inferior officer had been required to perform it. To do this would be not only to question the wisdom of the constitution or the law, but also to assert a right to make the governor the passive instrument of the judiciary in executing its mandates within the sphere of his own duties. Were the courts to go so far, they would break away from those checks and balances of government which were meant to be checks of cooperation, and not of antagonism or mastery, and would concentrate in their own hands something at least of the power which the people, either directly or by the action of their representatives, decided to entrust to the other departments of the government. [*Sutherland, supra* at 328-329.]

Here, unlike the executive power at issue in *Sutherland*, the power to amend the compacts was not granted by the Constitution or by law. It was contained in a gambling compact that was approved by the Legislature by means of a resolution, but not by means of a bill. While the Court was loath to interfere with an executive power held by the Governor in *Sutherland*, an essential element of this restraint was that the power had been properly given to the Governor. Thus, *Sutherland* is only applicable if the amendment power was delegated properly by the legislative branch to the executive branch. *Sutherland* does not say that every delegation of authority is constitutional or even discuss the parameters of a lawful delegation of authority, but merely addresses whether mandamus is appropriate to compel the Governor to act where statutory authority to act was conferred.

*Straus v Governor*, 459 Mich 526; 592 NW2d 53 (1999), is similarly unhelpful to the state and the tribe. *Straus* dealt with an executive order transferring duties from the State Board of Education to the Superintendent of Public Instruction. The authority to take this action was granted by Const 1963, art 5, § 2, which

authorizes the Governor to "make changes in the organization of the executive branch or in the assignment of functions among its units," subject to legislative disapproval of an executive order by resolution. Thus, *Straus* addresses deference to the Governor in the exercise of authority conferred by statute or by the Constitution.

The dissent cites *Flint City Council v Michigan*, 253 Mich App 378; 655 NW2d 604 (2002), in support of the contention that it is not the function of this Court to invalidate a decision made by the Legislature after the Legislature elected to grant the Governor broad amendment powers and validly did so. In *Flint City Council*, this Court held that because the Legislature did not impose procedural requirements for the conduct of a hearing to be conducted by the Governor or the Governor's designee under MCL 141.1215(2), it "inten[ded] to leave the scope of review to the Governor's discretion." *Flint City Council, supra* at 391. However, *Flint City Council* involved power conferred by statute, whereas here the Legislature never validly conferred the power at issue to the Governor.

The state cites *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291; 586 NW2d 894 (1998), for the proposition that there can be an overlapping of powers between the separate branches of government. However, this presumes that the overlapping powers have been properly delegated. In *Judicial Attorneys*, the Legislature, through statute, provided a new employer for certain employees of the Wayne Circuit Court and the Recorder's Court. The question was whether this action impinged on the power of the judiciary. It was recognized that the judiciary's authority to manage the courts was constitutionally based:

>     That the management of the employees of the judicial
>     branch falls within the constitutional authority and re-
>     sponsibility of the judicial branch is well established. The
>     power of each branch of government within its separate
>     sphere necessarily includes managerial administrative au-
>     thority to carry out its operations. [*Id.* at 297.]

The Court noted that "the separation of powers doc-
trine does not require so strict a separation as to
provide no overlap of responsibilities and powers" and
that "[i]f the grant of authority to one branch is limited
and specific and does not create encroachment or ag-
grandizement of one branch at the expense of the other,
a sharing of power may be constitutionally permis-
sible." *Id.* at 296-297. However, it held that the Legis-
lature had overstepped the line and that the statute it
enacted had violated the separation of powers doctrine.
Significantly, the judicial power being discussed was a
power that was conferred by the Constitution. *Judicial
Attorneys* in no way suggests that there can be an
overlapping of powers where, as here, the power at issue
was never conferred by the Constitution or by statute.

### VI. CONCLUSION

We conclude that under the facts of this case, Const
1963, art 3, § 2 was violated. We reinstate the decision
of the circuit court relative to this issue. We decline to
address plaintiffs' additional arguments.

Owens, P.J., concurred.

Borrello, J. (*dissenting*). I respectfully dissent be-
cause I strongly disagree with the majority's erroneous
conclusion that the provision in the tribal-state gaming
compacts that grants the Governor the authority to
amend such compacts without legislative approval vio-
lates the separation of powers doctrine found in Const

1963, art 3, § 2. I would therefore reverse the trial court's ruling that the amendment provision in the compacts constituted a violation of the Separation of Powers Clause of the Michigan Constitution.

In Justice KELLY's concurring opinion in *Taxpayers of Michigan Against Casinos v Michigan*, 471 Mich 306, 349; 685 NW2d 221 (2004) (*TOMAC*), she asserted that, while the issue of the constitutionality of the amendment provision in the compacts was not ripe for review because no amendment to the compacts had been made, "[t]he amendment provision of the compacts survives a facial challenge to the Separation of Powers Clause of the Michigan Constitution." I agree with Justice KELLY's reasoning and would further conclude that, as applied, the provision in the compacts that permits the Governor to amend the compacts without legislative approval does not violate the separation of powers doctrine. The Separation of Powers Clause of the Michigan Constitution provides:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution. [Const 1963, art 3, § 2.]

Under the Michigan Constitution, "the Legislature is to exercise the 'legislative power' of the state, Const 1963, art 4, § 1, [and] the Governor is to exercise the 'executive power,' Const 1963, art 5, § 1 . . . ." *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 613; 684 NW2d 800 (2004). The legislative power includes "the general power to contract unless there is a constitutional limitation." *TOMAC, supra* at 328. As the majority correctly observes, "[b]y separating the powers of government, the framers of the Michigan Constitution sought to disperse governmental power

and thereby to limit its exercise." *Nat'l Wildlife Federation, supra* at 613. However, "the separation of powers doctrine does not require so strict a separation as to provide no overlap of responsibilities and powers." *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 296; 586 NW2d 894 (1998).

Section 16 of the compacts provides:

> This Compact may be amended by mutual agreement between the Tribe and the State as follows:
>
> (A) The Tribe or the State may propose amendments to the Compact by providing the other party with written notice of the proposed amendment as follows:
>
> (i) The Tribe shall propose amendments pursuant to the notice provisions of this Compact by submitting the proposed amendments to the Governor who shall act for the State.
>
> (ii) The State, acting through the Governor, shall propose amendments by submitting the proposed amendments to the Tribe pursuant to the notice provisions of this Compact. [Compact between the Little Traverse Bay Bands of Odawa Indians and the State of Michigan, § 16.]

Section 16 effectively grants the Governor the power to amend the compacts without the Legislature's approval. The Legislature's approval of the compacts by resolution included approval of this amendment provision. Therefore, the Legislature, in approving the compacts by resolution, also approved the amendment process, thus permitting the Governor to amend the compacts without legislative approval. It is significant that the Legislature approved the compacts with full knowledge of the existence of the amendment provision. While it may be true that the Legislature did not anticipate or contemplate a particular amendment, it nevertheless knowingly approved the compacts with the

amendment provision. Therefore, as long as any amendment of a compact was constitutional, it was proper.

When the Legislature approved the compacts with the amendment provision, the Legislature effectively granted the Governor approval in advance of any amendments of the compacts. This legislative action authorized the Governor, in advance, to bind the state to any amendments. It is not the function of this Court to interfere with the legitimate exercise of legislative discretion, and this Court must be mindful of the limits on the judiciary's role regarding matters involving the separation of powers. I believe that by holding that the provision in the compacts permitting the Governor to amend the compacts without legislative approval violates the separation of powers doctrine, the majority effectuates an improper interference by the judicial branch with the legitimate discretion of the Legislature to give advance authorization to the Governor to make amendments to the tribal-state gaming compacts. As the Supreme Court explained in *TOMAC*:

> More importantly, because our Legislature had the discretion to approve the compacts by resolution rather than by bill, the courts cannot interfere with that legitimate exercise of legislative discretion. As this Court recognized long ago in *Detroit v Wayne Circuit Judge*, 79 Mich 384, 387; 44 NW 622 (1890):
>
> "It is one of the necessary and fundamental rules of law that the judicial power cannot interfere with the legitimate discretion of any other department of government. So long as they do no illegal act, and are doing business in the range of the powers committed to their exercise, no outside authority can intermeddle with them . . . ." [*TOMAC, supra* at 329.]

Respectful of the judiciary's role in such matters, I would decline to interfere with the Legislature's legiti-

mate exercise of its discretion, in approving the compacts by resolution, to approve in advance any amendments of the compacts. The Supreme Court has previously recognized that, as a part of the judicial branch of government, courts must exercise judicial restraint when deciding cases presenting separation of powers issues relating to the delegation of legislative power to administrative agencies. See *Judges of the 74th Judicial Dist v Bay Co,* 385 Mich 710, 727-728; 190 NW2d 219 (1971). In my view, judicial restraint is also appropriate in the case at bar when the Governor is exercising authority under the amendment provision of the compacts, which were validly approved by the Legislature. I am mindful of our Supreme Court's admonition regarding " '[t]he need for utmost delicacy on the part of the judiciary, and respect for the unique office of Governor . . . . "It would be . . . unseemly and unlawful to invade [the Governor's] discretion" ' " to make decisions regarding a matter that the Legislature validly entrusted to the Governor's discretion. *Straus v Governor,* 459 Mich 526, 532-533; 592 NW2d 53 (1999), quoting *Straus v Governor,* 230 Mich App 222, 227-228; 583 NW2d 520 (1998) (citation omitted).[1]

In my estimation, the majority fails to appreciate that " 'an indispensable ingredient of the concept of coequal branches of government is that "each branch must recognize and respect the limits on its own authority and the boundaries of the authority delegated to the other branches." ' " *Judicial Attorneys Ass'n, supra* at 305, quoting *Employees & Judge of the Second Judicial Dist Court v Hillsdale Co,* 423 Mich 705, 717; 378 NW2d 744 (1985), quoting *United States v Will,* 449

---

[1] Such deference to the role of the Legislature and the Governor is in keeping with our Supreme Court's decisions during the tenure of our previous governor.

US 200, 228; 101 S Ct 471; 66 L Ed 2d 392 (1980). It is not the function of this Court to invalidate a decision made by the Legislature in its exercise of a constitutionally permitted authority when the Legislature itself elected to grant the Governor the power to amend the compacts and validly did so. In *Flint City Council v Michigan*, 253 Mich App 378, 391; 655 NW2d 604 (2002), this Court held that, because the Legislature did not impose procedural requirements for the conduct of a hearing to be conducted by the Governor or the Governor's designee under MCL 141.1215(2), it "inten[ded] to leave the scope of review to the Governor's discretion." I would similarly conclude that in approving the compacts with the amendment provision, the Legislature intended to leave the decision whether to amend the compacts to the Governor's discretion as limited by the language in the existing compacts themselves and provided, of course, that any amendment is not unconstitutional.[2] The majority suggests that *Flint City Council* is distinguishable from the instant case because, in the instant case, the Legislature did not validly confer the power to amend the compacts on the Governor, whereas *Flint City Council* involved power that was validly conferred by statute. I disagree. The Legislature validly conferred on the Governor the power to amend the compacts. Out of consideration of the separation of powers doctrine and respect for and deference to the Legislature's authority and discretion to grant the Governor the power to enter into the

---

[2] For reasons that will be explained more fully later in this dissent, I do not believe that the Legislature's grant of authority to the Governor in this case was so broad as to constitute an unconstitutional delegation without limitation. Although I am not convinced that the Legislature's approval of the compacts constituted a delegation of power, if, in fact, such a delegation occurred, there were adequate safeguards and limitations to render the delegation constitutional.

compacts and to amend them without legislative approval, I would decline to interfere with the Legislature's authority to approve the compacts and to issue advance approval of any amendments to those compacts.

The unique legal status of Indian casino gaming and the facts of this case, as well as the limits that federal law places on the states' roles in negotiating with the tribes, also support the conclusion that the separation of powers doctrine was not violated in this case. As our Supreme Court accurately observed in *TOMAC*, "[T]he Legislature could not have unilaterally exerted its will over the tribes involved." *TOMAC, supra* at 319. Federal law limits the states' roles in negotiating with the tribes through the compacting process. Therefore, because of the state of Michigan's limited role in negotiating with the tribes under federal law, it was necessary, as the Legislature recognized in approving the compacts containing the amendment provision, to facilitate the Governor's involvement in the negotiations process with the tribes. The Supreme Court recognized in *TOMAC* that by approving the compacts, "the Legislature simply expressed its approval of valid contracts between two independent, sovereign entities." *Id.* at 312. In doing so, the Legislature helped to secure an important source of revenue for the state.

The majority, relying on *Roxborough v Michigan Unemployment Compensation Comm*, 309 Mich 505; 15 NW2d 724 (1944), concludes that the Governor is not authorized to enter into compacts or to make amendments to compacts without legislative approval because there exists no statutory or constitutional authority for the Governor to do so, and mere approval by resolution is insufficient to confer such authority. In *Roxborough*, our Supreme Court stated that " '[p]ublic officers have

and can exercise only such powers as are conferred on them *by law*, and a State is not bound by contracts made in its behalf by its officers or agents without previous authority conferred *by statute or the Constitution.*' " *Roxborough, supra* at 510 (emphasis added; citation omitted). The holding in *Roxborough* is consistent with the rule that "[g]enerally, only persons authorized by the state constitution or a statute can make a contract binding on a state . . . ." 72 Am Jur 2d, States, Territories, and Dependencies, § 71, p 457. Notwithstanding its holding in *Roxborough*, however, the Supreme Court specifically held in *TOMAC* that the Legislature's approval of the compacts, which included a provision granting the Governor the power to amend the compacts without legislative approval, by resolution was valid because the compacts were contractual in nature, not legislation: "Our Constitution does not prohibit the Legislature from approving contracts, such as the compacts at issue here, by concurrent resolution." *TOMAC, supra* at 327. The majority's view disregards the significance of the Supreme Court's explicit holding that the "Legislature had the discretion to approve the compacts by resolution rather than by bill" and fails to recognize that "the courts cannot interfere with that legitimate exercise of legislative discretion." *Id.* at 329. I would interpret the Supreme Court's holding in *TOMAC* as permitting the Governor to enter into the compacts and make amendments to them even without explicit statutory or constitutional authority to do so because such power was validly conferred on the Governor by the Legislature through a resolution. In my view, in light of the fact that the Supreme Court explicitly held in *TOMAC* that the Legislature's approval of the compacts by resolution was valid, the Supreme Court's pronouncement in *Roxborough* that " 'a State is not bound by contracts made on its behalf by its officers or agents

without previous authority conferred *by statute or the Constitution*' " is not dispositive or controlling in this case. *Roxborough, supra* at 510 (emphasis added; citation omitted). Irrespective of whether there was a statutory or constitutional authorization for the Governor to enter into or amend a compact on behalf of the state, I would conclude that the Governor did possess such authority on the basis of the Legislature's valid approval of the compacts by resolution. *TOMAC, supra* at 327-329.

I also question the majority's reliance on *McCartney v Attorney General*, 231 Mich App 722; 587 NW2d 824 (1998), in support of its holding. The majority relies on this Court's statement in *McCartney* that "there is no constitutional impediment to the Governor's negotiating with an Indian tribe where the product of his [or her] negotiations has no effect *without legislative approval*." *Id.* at 729 (emphasis added). According to the majority, in *McCartney* this Court "expressed careful recognition that, although the Governor had the authority to negotiate and execute gambling compacts, the actions were subject to legislative approval." *Ante* at 241. The majority's reliance on *McCartney* is questionable because, in the instant case, the Legislature did approve any amendments of the compacts made by the Governor when it approved the compacts by resolution. Because there was legislative approval in this case, albeit advance approval, I disagree with the majority's suggestion that such approval did not exist in the instant case.

Moreover, I disagree with the majority that there was no valid delegation of legislative authority to the Governor in this case. I would conclude that the Legislature, to the extent that it may have delegated to the Governor its authority to enter into contracts on behalf

of the state, adequately specified the Governor's power and placed sufficient limitations and restraints on the Governor's power to contract. "Generally, the courts have adopted a lenient and expansive test to measure the constitutionality of the standards which delegate legislative authority." *Delta Co v Dep't of Natural Resources*, 118 Mich App 458, 464; 325 NW2d 455 (1982). "If the grant of authority to one branch is limited and specific and does not create encroachment or aggrandizement of one branch at the expense of the other, a sharing of power may be constitutionally permissible." *Judicial Attorneys Ass'n, supra* at 297. The Legislature is permitted to delegate its legislative authority as long as there are standards that are as reasonably precise as the subject matter requires or permits. *Westervelt v Natural Resources Comm*, 402 Mich 412, 439; 263 NW2d 564 (1978) (opinion by WILLIAMS, J.). When such standards exist, the delegation is constitutional "because the Legislature has (1) authorized and (2) limited such action." *Id.* at 441. The purpose of the delegation requirements is to provide constitutional accountability so that the Legislature, the courts, and the public might effectively measure or "check" the use of delegated power. *Id.* at 439.

I am not persuaded that the Legislature's approval of the compacts constituted a delegation of legislative power at all, as opposed to the Legislature merely exercising its own authority to bind the state to subsequent contractual amendments negotiated between the Governor and the tribe. However, assuming that the Legislature did delegate to the Governor its authority to enter into contracts on behalf of the state, I would reject the conclusion that the delegation was constitutionally infirm because it was not sufficiently defined or specific or lacked adequate standards. At the outset, I would observe that while the Supreme Court has held that the

Legislature must provide standards to an administrative agency for the exercise of the power delegated to it, "we are not dealing here with an administrative agency; rather, this case involves a decision by the chief executive officer of the state, who stands on an equal level with the Legislature and the judiciary." *Flint City Council, supra* at 391. However, to the extent that the Supreme Court has suggested that the standards approach to analyzing whether a delegation of legislative authority to an administrative agency is valid can be applied to test the validity of other types of delegations of legislative authority, *Westervelt, supra* at 444 n 21 (opinion by WILLIAMS, J.), I would conclude that the standards were sufficient in this case, if, in fact, there was a delegation.

First, if the Legislature did delegate its power to contract to the Governor, it did not broadly delegate its entire power to enter into tribal-state gaming compacts with an Indian tribe. Rather, any delegation of the Legislature's power to enter into contracts on behalf of the state of Michigan was limited to granting the Governor the authority to amend the existing tribal-state gaming compacts. Moreover, the express terms of the amendment provision in the compacts itself further limit the Governor's power. For example, § 16(A)(iii) prohibits the Governor from consenting to an amendment that would expand the definition of "eligible Indian lands." Furthermore, the Governor's power to amend the compacts is also restricted by constitutional considerations. Therefore, even assuming that the Legislature's approval of the compacts did constitute a delegation to the executive branch of the Legislature's authority to enter into contracts on behalf of the state, I would conclude that there were sufficient standards and limitations on that power. Because there are sufficient safeguards in place to check the exercise of any

power that may have been delegated, any grant of legislative authority to the Governor did not create encroachment or aggrandizement of one branch of government at the expense of another.

For these reasons, I disagree with the majority. Accordingly, I would reverse the trial court's decision and hold that the provision in the tribal-state gaming compacts granting the Governor the authority to amend the compacts does not violate the Separation of Powers Clause of the Michigan Constitution.